674 So.2d 960 (1996)
Joseph B. FONTENOT and Earlene S. Fontenot
v.
ABC INSURANCE COMPANY, et al.
No. 95-C-1707.
Supreme Court of Louisiana.
June 7, 1996.
*961 J.J. McKernan, John H. Smith, for Applicants.
Katherine Aline Pavy, Mark W. Judice, Juneau, Judice, Hill & Adley; Deborah DEo Gracias Trahan, for Respondents.
JOHNSON, Justice[*].
We granted certiorari to determine whether a physician exhibited conduct which triggered the application of the equitable doctrine contra non valentem, so as to suspend the running or accrual of prescription in this medical malpractice action.[1] The court of appeal ruled that the physician did not conceal or misrepresent facts to prevent the plaintiffs from asserting their cause of action within the one-year prescriptive period, and affirmed the trial court's sustaining of the defendants' Peremptory Exception of Prescription. For the reasons stated below, we affirm the lower courts' decisions.

FACTS
This appeal arises from a medical malpractice action which plaintiffs, Joseph B. Fontenot and Earlene S. Fontenot, filed against Dr. Thomas V. Bertuccini and his insurer. Earlene S. Fontenot visited Dr. James Trahan's office in November, 1989, seeking medical attention for urinary and bladder discomfort and control problems. After performing a series of tests on Mrs. Fontenot, Dr. Trahan found that Mrs. Fontenot had spinal abnormalities and referred her to Dr. Thomas V. Bertuccini, a neurosurgeon. During an office visit in January, 1990, Dr. Bertuccini informed Mrs. Fontenot that the tests performed by Dr. Trahan indicated that she suffered from a subtotal block at L4-5 and spinal stenosis. Dr. Bertuccini informed Mrs. Fontenot that surgery was necessary to remedy her condition. On a subsequent office visit, Mrs. Fontenot assented to the surgery.
*962 On February 12, 1990, Dr. Bertuccini performed spinal surgery on Mrs. Fontenot, during which he performed a laminectomy at L4-5 and foraminotomies at L3-4 and L4-5 bilaterally. Dr. Bertuccini used a power drill to cut through tissue and bone near Mrs. Fontenot's spinal cord. During this procedure, the drill bit being used by Dr. Bertuccini slipped. As a result of the slipping of the drill, Dr. Bertuccini nicked Mrs. Fontenot's dura, which is the tough, fibrous membrane forming the outer envelope of the brain and spinal cord. In their Petition for Damages, plaintiffs alleged that as a result of Dr. Bertuccini's nicking Mrs. Fontenot's dura, she suffered leakage of the cerebrospinal fluid, which caused severe, permanent damage to the L-5 sensory nerve root and individual sensory nerve rootlets, resulting in chronic and severe pain in her left leg and rectum, severe bowel incontinence, and a recurring inability to urinate, which required the daily implanting of a catheter for approximately five months.
According to Mr. Fontenot's deposition, shortly after the surgery and while Mrs. Fontenot was being brought to the recovery room, Dr. Bertuccini informed him that the drill had slipped, and that he had to make repairs but everything would be alright. In Mrs. Fontenot's deposition, she stated that she had no recollection of Dr. Bertuccini informing her that the drill had slipped. Mrs. Fontenot did indicate however, that during her hospitalization, subsequent to the surgery, she experienced numbness in her left leg and rectal area, as well as an uncontrollable bowel movement. During this time, Dr. Luis deAraujo, Dr. Bertuccini's partner, told Mrs. Fontenot that the numbness may have been caused by a damaged nerve. Also, during subsequent follow-up visits, Dr. Bertuccini told Mrs. Fontenot that it would take time for her to recover from surgery.
In June, 1991, Dr. Bertuccini moved to another state. Mrs. Fontenot visited with Dr. deAraujo one time after Dr. Bertuccini's move, July 29, 1991. During this visit, Dr. deAraujo, suggested to Mrs. Fontenot that she consider undergoing a sympathectomy. Mrs. Fontenot stated that she did not ask the reason for this surgery, but she thought that it was intended to stop her pain. She sought a second opinion regarding the sympathectomy at Ochsner Medical Institution (Ochsner). At Ochsner, Mrs. Fontenot completed a "Personal History" form, dated July 7, 1991, on which she wrote that her primary problem was that "[I] had surgery on 4/5 disc which left me with nerve damagemy doctor referred me to a vascular surgeon for a sympathemy (sic) of left lumbar."
Mrs. Fontenot underwent a sympathectomy at Lafayette General. At Lafayette General, Mrs. Fontenot completed a "Lafayette General Medical Center Nursing AdmissionHistory Assessment," which was dated November, 19, 1991. On this form, which was signed by Mrs. Fontenot and completed by a nurse who questioned her prior to the sympathectomy, Mrs. Fontenot stated that her chief complaint was "nerve damage rectal pain & leg pain." Also in this form, Mrs. Fontenot noted that her surgical history included "nerve damage from disc surgery." Also posed in this form was the question, "[w]hat do you know about your present hospitalization?" Mrs. Fontenot responded that it was to "correct damage to nerve from disc surgery."
The sympathectomy did not eliminate Mrs. Fontenot's pain, and in October, 1992, she saw Dr. Michael Carey, a neurosurgeon at LSU Medical Center. Mrs. Fontenot asked Dr. Carey why she was having so many problems, and he told her she had nerve damage as a result of the surgery performed by Dr. Bertuccini.
On February 4, 1993, plaintiffs filed suit against Dr. Bertuccini and his insurer. The defendants filed an Exception of Prescription, which was granted by the trial court. Finding that Mrs. Fontenot acquired actual knowledge of her injuries and the cause thereof more than one year prior to the filing of the petition, and discounting application of any of the grounds for suspending or interrupting prescription, the court of appeal affirmed the trial court's decision.[2]

*963 LAW AND DISCUSSION
Prescription runs against all persons unless exception is established by legislation. La.C.C. art. 3467. Contra non valentem is an exception to this express statutory provision. See Taylor v. Giddens, 618 So.2d 834, 841 (La.1993); Rajnowski v. St. Patrick's Hospital, et al, 564 So.2d 671, 673 (La.1990). Contra non valentem is a judicially-created exception to the general rule of prescription based on the civilian doctrine of contra non valentem agere nulla currit praescriptio. Rajnowski at 674. The doctrine suspends the running of prescription in four situations:
(1) Where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action;
(2) Where there was some condition coupled with a contract or connected with the proceedings which prevented the creditor from suing or acting;
(3) Where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action;
(4) Where the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant. Rajnowski at 674.
La.R.S. 9:5628, which establishes the time for filing medical malpractice actions, provides as follows:
"No action for damages for injury or death against any physician, chiropractor, dentist, psychologist, or hospital duly licensed under the laws of this state, whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission or neglect."
Contra non valentem in medical malpractice suits has been embodied in La.R.S. 9:5628. White v. West Carroll Hospital, Inc., 613 So.2d 150, 155 (La.1992).
Heretofore, this court has failed to expressly and directly declare that the third category of contra non valentem applies to medical malpractice cases. See Taylor v. Giddens at 841. The court has nevertheless examined the applicability of the third category to facts in medical malpractice cases. See Taylor v. Giddens, 618 So.2d 834 (La. 1993); Rajnowski v. St. Patrick's Hospital, supra; Gover v. Bridges, 497 So.2d 1364 (La.1986); and Whitnell v. Menville, 540 So.2d 304 (La.1989). Assuming that the third category of contra non valentem does apply to medical malpractice actions under La.R.S. 9:5628, the court will determine whether its application has been triggered under the facts and circumstances of the present case.
The third category of contra non valentem applies when the health care provider himself has done some act effectually to prevent the victim from availing himself of his cause of action for medical malpractice. Taylor v. Giddens at 841. To trigger application of the third category, a physician's conduct must rise to the level of concealment, misrepresentation, fraud or ill practices. See Rajnowski at 676. The evidence reveals that on February 12, 1990, the date of the surgery, Dr. Bertuccini informed Mr. Fontenot that the drill had slipped. Mr. Fontenot admits this fact, but added that Dr. Bertuccini told him he would make repairs and that everything would be alright. Mrs. Fontenot denies any recollection that Dr. Bertuccini informed her of this fact, but the evidence nevertheless reveals that subsequent to the surgery and while Mrs. Fontenot was still hospitalized, Dr. deAaujo, Dr. Bertuccini's partner, informed her that the numbness in her leg and rectal area may have been caused by a damaged nerve. These facts discredit plaintiffs' allegations of fraud, concealment, misrepresentation, or a breach of duty to disclose on the part of Dr. Bertuccini. Moreover, the court finds that these facts fail to support a finding that Dr. Bertuccini did some act which prevented plaintiffs from availing themselves of a cause of action.
Plaintiffs also allege that prescription did not begin to run until October, 1992 because *964 Dr. Bertuccini made reassurances to Mrs. Fontenot that her condition was temporary and would resolve over time. She maintains that such misstatements and reassurances misled her and caused her to misunderstand the nature of her medical condition. This court has previously examined misrepresentations, misstatements and reassurances as they apply to the third category of contra non valentem. In Gover v. Bridges, supra, the defendant, Dr. Ronze McIntyre Bridges, made misstatements of fact in a letter he wrote to plaintiff regarding the circumstances surrounding the death of plaintiff's mother while she was hospitalized. Plaintiff alleged that she trusted Dr. Bridges and his letter reassured her. Gover at 1368. Plaintiff further alleged that the misstatements contained in the letter prevented them from filing their medical malpractice action earlier. Id. This court held that the none of the errors or misstatements in the letter effectually prevented plaintiffs from availing themselves of their cause of action. The court found that the kind of reassurance given by the doctor to plaintiff did not reach the level of either fraud or breach of duty to disclose. Id. The court noted that although the deceased mother's charts were available, plaintiffs failed to request them. The court also considered the fact that Mrs. Smith, one of the plaintiffs who was employed in a clerical capacity at the Veterans Administration Hospital, was neither ignorant nor unintelligent. Id. Thus, irrespective of false statements and reassurances made by Dr. Bridges, this court found that Dr. Bridges' conduct did not reach the level of fraud or a breach of duty to disclose, which prevented plaintiff, Mrs. Smith, from learning of her cause of action.
Similarly, in the present case, Dr. Bertuccini did not effectually prevent the Fontenots from availing themselves of their medical malpractice cause of action. Dr. Bertuccini disclosed to Mr. Fontenot, on the day of the surgery, that the drill had slipped. Shortly after the surgery, Dr. Bertuccini's partner, Dr. deAraujo, informed Mrs. Fontenot that numbness in her leg and rectal area may have been caused by nerve damage. Additionally, no evidence was presented to support a finding that Dr. Bertuccini prevented plaintiffs from obtaining Mrs. Fontenot's medical records. Moreover, following Gover v. Bridges, Dr. Bertuccini's reassurances that Mrs. Fontenot's condition would resolve over time do not reach the level of fraud or a breach of duty to disclose. Furthermore, Mrs. Fontenot was neither unintelligent nor ignorant. She earned a certificate at Spencer Business College, and had previously worked in secretarial positions for over twenty years before retiring. Finally, Dr. Bertuccini stopped treating Mrs. Fontenot in June, 1991, when he moved to another state. Therefore, any continuing reassurances or continuing duty ceased as of this date, or on July 29, 1991 when Mrs. Fontenot had her last visit with Dr. deAraujo, Dr. Bertuccini's partner. Hence, the record is void of any evidence that Dr. Bertuccini prevented plaintiffs from effectually availing themselves of their medical malpractice cause of action.
The record also fails to support application of the fourth category of contra non valentem. Under the fourth category, prescription does not begin to run until the plaintiff knows sufficient facts and has a reasonable basis for filing suit against a certain defendant. Chaney v. State of Louisiana, Through the Dept. of Health and Human Resources.[3] The evidence in the instant case reveals that Mrs. Fontenot filled out forms on July 7, 1991 and November 19, 1991, in which she wrote that she suffered nerve damage from disc surgery. This information indicates that as of these dates, Mrs. Fontenot had knowledge of her injury from the surgery, as well as the causal connection. Therefore, plaintiffs were aware of sufficient information to incite their inquiry. Plaintiffs' contention that Dr. Bertuccini's failure to inform them that Mrs. Fontenot's condition was permanent versus temporary is of no consequence. Ignorance or misunderstanding of the probable extent or duration of injuries materially differs from ignorance of actionable harm which delays commencement of prescription.[4]
*965 Prescription does not run against one who is ignorant of facts upon which his cause of action is based as long as such ignorance is not willful, negligent or unreasonable. White v. West Carroll Hospital, Inc. at 155. The court finds that the causation between surgery and injuries was reasonably knowable in excess of one year prior to plaintiffs' filing of the instant suit against Dr. Bertuccini. Even if this court were to find that plaintiffs were unaware of facts which support a medical malpractice cause of action prior to October, 1992, the court would further find that such lack of knowledge was negligent and unreasonable under the facts and circumstances of this case.

DECREE
For the foregoing reasons, we affirm the judgment of the trial court, as affirmed by the court of appeal, sustaining the defendants' Peremptory Exception of Prescription.
AFFIRMED.
NOTES
[*] Because of the vacancy created by the resignation of Dennis, J., now a judge on the United States Court of Appeals for the Fifth Circuit, there was no justice designated "not on panel" under Rule IV, Part 2, § 3. Panel included Chief Justice Calogero and Justices Marcus, Watson, Lemmon, Kimball, Johnson and Victory.
[1] 95-1707 (La. 10-27-95), 661 So.2d 1367.
[2] 94-01276 (La.App. 3rd Cir. 4/5/95), 651 So.2d 992.
[3] 432 So.2d 256 (La.1983).
[4] Knippers v. Lambard, 620 So.2d 1368 (La.App. 2nd Cir.1993), writ denied, 629 So.2d 1169 (La. 1993), citing Percy v. State, E.A. Conway Memorial Hospital, 478 So.2d 570 (La.App. 2nd Cir. 1985).

See also Dufriend v. Tumminello, 590 So.2d 1354 (La.App. 5th Cir.1991), writ denied, 592 So.2d 1335 (La.1992).