I,BROWN, J.
Plaintiff, Bobby Ray Ainsworth, has appealed the trial court’s dismissal of his medical malpractice action against defendants, Dr. Brian Bulloch and St. Francis Medical Center, as untimely. We affirm.

Factual and Procedural Background

Plaintiff, a 41-year-old-man, injured his back in a job-related accident in 1995. Previously, in 1990, he had a decompres-sive laminectomy and diskectomy at the L4-L5 level.
On the morning of May 15, 1996, Dr. Brian Bulloch, an orthopaedic surgeon, performed a diskectomy and fusion on plaintiff at the L4-L5 level. Immediately after the operation, plaintiff could not feel or move his feet or control his bowel, bladder and sexual functions. Dr. Bulloch diagnosed plaintiff with post-operative cauda equina syndrome and immediately conducted a second operation.[1] After the second procedure, plaintiff regained feeling and control in his feet but remained without control of his bowel, bladder and sexual functions. Dr. Bulloch remained *888 optimistic and informed plaintiff that his condition could improve over time.
On June 7, 1996, plaintiff underwent a third (second remedial) operation performed by Dr. Jose Bermudez, a neurosurgeon, who was assisted by Dr. Bulloch. After the third procedure, plaintiff noticed no improvement. However, plaintiff was again informed that his condition could improve over time.
On August 6, 1996, Dr. Bulloch informed plaintiff that he had reached maximum medical improvement (“MMI”) and that he was 68% disabled. On September 5, 1996, Dr. Bermudez informed plaintiff that he was 100% disabled.
|2On June 19, 1997, plaintiff filed a Request for Medical Review Panel. On July 29, 1998, defendants filed an exception of prescription. The trial court initially denied the exception; however, after it was shown that counsel for Dr. Bulloch never received notice of the hearing date, the trial court considered the parties’ arguments and granted the exception. Plaintiff appeals this ruling.

Discussion

Under La.R.S. 9:6628, a medical malpractice action shall be brought within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, in all events such claims shall be filed at least within a period of three years from the date of the alleged act, omission or neglect.
Plaintiff argues that prescription was suspended until he was told that he had reached maximum medical improvement. Under the specific circumstances of this case, we cannot agree.
Contra non valentem is a judicially-created exception to the general rule of prescription. Fontenot v. ABC Ins. Co., 95-1707 (La.06/07/96), 674 So.2d 960; Taylor v. Giddens, 618 So.2d 884 (La.1993); Rajnowski v. St. Patrick’s Hospital, 664 So.2d 671 (La.1990). Contra non valentem applies in four situations:
(1) Where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiffs action;
(2) Where there was some condition coupled with a contract or connected with the proceedings which prevented the creditor from suing or acting;
(3) Where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action;
(4) Where the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant.

Fontenot, supra; Rajnowski, supra.

|3The Louisiana Supreme Court addressed the application of the third category of contra non valentem in medical malpractice cases in Fontenot, supra at 963, stating:
Heretofore, this court has failed to expressly and directly declare that the third category of contra non valentem applies to medical malpractice cases. See Taylor v. Giddens at 841. The court has nevertheless examined the applicability of the third category to facts in medical malpractice cases. See Taylor v. Giddens, 618 So.2d 834 (La.1993); Rajnowski v. St. Patrick’s Hospital, supra; Gover v. Bridges, 497 So.2d 1364 (La.1986); and Whitnell v. Menville, 540 So.2d 304 (La.1989). Assuming that the third category of contra non valentem does apply to medical malpractice actions under La.R.S. 9:5628, the court will determine whether its application has been triggered under the facts and circumstances of the present case.
The third category of contra non valen-tem applies when the health care provider himself has done some act effectually to prevent the victim from availing himself of his cause of action for medical malpractice. Taylor v. Giddens at 841. To trigger application of the third category, a physician’s conduct must rise to *889 the level of concealment, misrepresentation, fraud or ill practices. See Rajnow-ski at 676.
In the case at bar, plaintiff alleges that prescription did not begin to run until at least August 6, 1996 because of Dr. Bulloch’s and Dr. Bermudez’s assurances to him that his condition could resolve over time. He maintains that these assurances misled him, causing him a delay in discovering the reason for his medical condition.
After reviewing the record, we find that neither physician’s conduct rose to the level of concealment, misrepresentation, fraud or ill practices. Drs. Bulloch and Bermudez explained the problem and told plaintiff that they believed that he could recover. A doctor’s reassurance that a patient’s condition could resolve over time does not necessarily reach the level of fraud or breach of duty to disclose. See Gover v. Bridges, 497 So.2d 1364 (La.1986). Furthermore, no evidence was presented to support a finding that either doctor prevented plaintiff from obtaining his medical records or any other information about his condition. The record lacks |4any substantial proof that Dr. Bulloch or Dr. Ber-mudez deceived plaintiff into believing something that was untrue.
The record also fails to support the application of the fourth category of contra non valentem. Under the fourth category, prescription does not begin to run until the plaintiff knows sufficient facts and has a reasonable basis for filing suit against a certain defendant. Chaney v. State of Louisiana, Through the Dept. of Health and Human Resources, 432 So.2d 256 (La.1983).
The evidence in the instant case reveals that plaintiff knew immediately that he had complications as a result of his first surgery. He underwent a second surgery that same day in an attempt to correct the problem. He further knew that he underwent a third procedure in an attempt to remedy these same complications.
In this case, plaintiffs contention that Dr. Bulloch’s failure to inform him that his condition was permanent does not change the outcome. Ignorance or misunderstanding of the probable extent or duration of injuries materially differs from ignorance of actionable harm which delays commencement of prescription. Fontenot, supra.
In his deposition, plaintiff confirmed his diary entries. We note that these entries were not written contemporaneously but only after plaintiff consulted with an attorney some months following the June 7 th surgery. These entries, in part, state that plaintiff knew he had complications when he woke up from the first May 15 th surgery; that something “didn’t feel right ... I couldn’t feel my feet or move them ... had a MRI and then rushed to 2 nd surgery that evening;” that Dr. Bulloch said that in the first surgery “he went a little further than planned;” that the second May 15th surgery was done because “we feel like he (Dr. Bulloch) was going to try (to) repair what he had done in the first surgery;” and, following the June 7 th surgery, that Drs. Bulloch and Bermudez said “they tried to correct a problem, but nothing could be done, so (they) closed me back up.”
| sDr. Bermudez’s report states that prior to the June 7th surgery, he informed plaintiff and his wife of the reasons for the surgery, what he was trying to determine by performing the operation, that the outcome may be negative, the possibility of further complications and of a worsening of plaintiffs condition.
Under these circumstances, it was reasonable to conclude that plaintiff knew of a possible cause of action at least by the time of the June 7, 1996 surgery. His initiation of a medical review panel on June 16,1997, was therefore untimely.

CONCLUSION

For the reasons expressed above, the judgment of the trial court sustaining defendants’ exception of prescription and dis *890 missing all of plaintiffs claims is affirmed. Costs are assessed to plaintiff, Bobby Ray Ainsworth.

. The cauda equina is a large complex of nerves which are below the end of the spinal cord, yet within the spinal column. Cauda equina syndrome affects continence of bladder and bowel and sexual functions.