771 So.2d 258 (2000)
Hannah Jo ADAMS and Sam Adams, Jr.
v.
OCHSNER CLINIC OF BATON ROUGE, Mark D. Hannis, M.D., Claude J. Tellis, M.D. and A.P. Salmon, M.D.
No. 99 CA 2502.
Court of Appeal of Louisiana, First Circuit.
November 3, 2000.
Writ Denied January 12, 2001.
*259 Sumpter B. Davis, III, Baton Rouge, Counsel for Plaintiffs/Appellants, Hannah Jo Adams and Sam Adams, Jr.
Ann M. Halphen, Charles F. Gay, Jr., Baton Rouge, Counsel for Defendants/Appellees, Ochsner Clinic of Baton Rouge and Mark D. Hannis, M.D.
BEFORE: GONZALES, PETTIGREW and ROTHSCHILD,[1] JJ.
GONZALES, J.
In this appeal, Hannah Jo and Sam Adams, Jr. challenge a trial court judgment dismissing their medical malpractice claim against Dr. Mark D. Hannis and Ochsner Clinic of Baton Rouge (Ochsner Clinic) based on an exception of prescription.[2]

FACTUAL AND PROCEDURAL BACKGROUND
On November 17, 1989, Mrs. Adams underwent a routine physical examination by Dr. Hannis at Ochsner Clinic. Dr. Hannis ordered several tests, including x-rays of Mrs. Adams' chest, which were taken on November 29, 1989. The resulting radiology report indicated Mrs. Adams' right hilum[3] was "prominent and denser than the left." Follow-up was suggested by either a comparison to any available pre-existing x-rays or by a chest CT or further x-rays in four to six weeks. Mrs. Adams returned to see Dr. Hannis on December 8, 1989, to discuss her test results, but no mention was made of or further action taken regarding her chest x-ray results.
Almost one year later, Mrs. Adams returned to Dr. Hannis' office for another physical examination. X-rays were again ordered and a mass was discovered in the right center of Mrs. Adams' chest. Further testing revealed Mrs. Adams had adenocarcinoma of the right lung. In January of 1991, Mrs. Adams' entire right lung was removed.
In September of 1997, Mrs. Adams attended a hearing related to her claim for social security disability benefits. According to Mrs. Adams, she was first informed of the existence of the "abnormal" November 29, 1989 x-ray results by the administrative law judge conducting the disability benefits hearing. In July or August of 1998,[4] she and Mr. Adams filed a "Petition for Damages Resulting from Medical Malpractice and Request for Review of Claim" with the State of Louisiana, Commissioner of Administration.
On February 9, 1999, Dr. Hannis and Ochsner Clinic filed an exception of prescription in the district court.[5] After two *260 hearings, the trial court granted the exception and dismissed the Adamses' petition with prejudice. Mr. and Mrs. Adams appeal from this adverse judgment, contending the trial court erred in concluding prescription was not suspended under the doctrine of contra non valentem by Dr. Hannis' failure to tell Mrs. Adams of the "abnormal" November 29, 1989 x-ray.

PRESCRIPTION
Generally, a medical malpractice action must be filed within one year of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission or neglect, but in all cases, no later than three years from the date of the alleged act, omission or neglect. La. R.S. 9:5628(A); Wang v. Broussard, 96-2719 (La.App. 1 Cir. 2/20/98), 708 So.2d 487, 490, writ denied, 98-1166 (La.6/19/98), 720 So.2d 1213. Ordinarily, the burden of proof is on the party pleading prescription; however, if on the face of the petition it appears prescription has run, the burden shifts to the plaintiff to prove a suspension or interruption of the prescriptive period. Reno v. Perkins Engines, Inc., 98-1686 (La.App. 1 Cir. 9/24/99), 754 So.2d 1032, 1034, writ denied, 99-3058 (La.1/7/00), 752 So.2d 863.
In the present case, the "alleged act[s], omission[s], or neglect" identified by the Adamses, as they relate to Dr. Hannis are:
1. Failure to review [the] abnormal radiology report of [November 29, 1989].
2. Misdiagnosis or failure to diagnose carcinoma of the right lung immediately following the x-ray of [November 29, 1989].
3. Failure to ever inform Mrs. Adams of the abnormal chest x-ray taken November 29, 1989.
4. Failure to refer Mrs. Adams for oncological consult or other consult following the abnormal x-ray of November 29, 1989[,] as suggested by Dr. Salmon in his radiology report.
5. Failure in December, 1990[,] to immediately refer Mrs. Adams for oncological consult or other consult.
6. Failure in December, 1990[,] to compare [the] 1990 x-ray of Mrs. Adams with [the] November, 1989 x-ray and expedite examination and treatment based on the growth of the mass in Mrs. Adams['] right lung.
7. Failure to refer Mrs. Adams for a neurological consult based on her history of neurological problems.
The alleged liability of Ochsner Clinic is based on the principle of respondant superior, as Dr. Hannis was employed by Ochsner Clinic. Further, Mr. and Mrs. Adams allege Ochsner Clinic failed "to ensure an abnormal and suspicious chest x-ray was followed up immediately and appropriately."[6]
Thus, based on the face of their petition, Mr. and Mrs. Adams had until December of 1993, at the latest, and in all events, to file their suit. Considering they filed their petition before the medical review panel in July or August of 1998, outside of the preemptive period set forth in La. R.S. 9:5628, Mr. and Mrs. Adams had the burden of proving interruption or suspension of prescription.

Contra Non Valentem
To carry their burden of proof, Mr. and Mrs. Adams contend they should be allowed to avail themselves of the doctrine of contra non valentem, the judicially-created exception to the general rule of prescription. The doctrine of contra non valentem agere nulla currit praescriptio essentially provides that prescription does not run against a party unable to act. *261 Rajnowski v. St. Patrick's Hospital, 564 So.2d 671, 674 (La.1990). Although the doctrine applies in four general situations, Mr. and Mrs. Adams contend the third category is applicable herein; that is, where the defendant himself has done some act effectually to prevent the plaintiff from availing himself of his cause of action. Rajnowski, 564 So.2d at 674. However, to trigger application of the third category of contra non valentem, a defendant's conduct must rise to the level of concealment, misrepresentation, fraud, or ill practices. Fontenot v. ABC Insurance Company, 95-1707 (La.6/7/96), 674 So.2d 960, 963.[7]
Mr. and Mrs. Adams argue Dr. Hannis committed an "ill practice" when he failed to tell Mrs. Adams about the "abnormal" November 29, 1989 x-ray. In their brief, they contend Dr. Hannis had a duty to disclose the x-ray results to Mrs. Adams, that he breached that duty, and the breach of the duty constituted an "ill-practice" within the meaning of the third category of contra non valentem.[8] However, Mr. and Mrs. Adams have presented no evidence demonstrating Dr. Hannis definitely had a duty to disclose the x-ray results to Mrs. Adams.
The radiology report associated with the November 29, 1989 x-ray stated:
There are no prior films available for comparison. The heart is not enlarged. The aorta is normal. The right hilum is prominent and denser than the left. Main considerations are lymphadenopathy or prominent right pulmonary artery. Comparison with any previous studies if available would be helpful. If not[,] then consider chest CT or at least a follow-up study in 4-6 weeks. Both main pulmonary arteries are prominent, but no pulmonary nodule or lymphadenopathy is seen. Except for a smooth, round, 5 mm calcified granuloma, the lungs are well expanded. No active infiltrates, effusions, or masses are seen. Osseous structures are osteopenic but intact. (Emphasis added.)
Dr. Claude Tellis, the pulmonologist who performed the bronchoscopy and biopsy that led to Mrs. Adams' adenocarcinoma diagnosis, testified in a deposition regarding the significance of the November 29, 1989 x-ray and the accompanying radiology report. In Dr. Tellis' opinion, the x-ray was "abnormal;" however, because the radiology report gave a "list of possibilities" as to why the right hilum was "prominent and denser" than the left hilum (i.e., because of lymphadenopathy or the existence of a prominent right pulmonary artery), Dr. Tellis testified that one interpreting the x-ray could conclude that the prominence and density were normal occurrences. In Dr. Tellis' opinion, "then the xray could be considered to be normal." When asked whether a standard existed whereby a physician is required to report abnormal findings to a patient, Dr. Tellis stated:
Well, that's a tough question. I think it is a standard to report any findings that you consider to be significant to the patient. The reason I say that is there are all kinds of findings on the chest x-ray that arethat you assess and you determine are not important and so you don't discuss every abnormality that might be on the chest x-ray, but certainly when you have a problem on the chest x-ray, Iwe all would discuss it with *262 them. I think that's pretty much what everybody would do.
After a thorough review of the record, we conclude Mr. and Mrs. Adams have failed to prove Dr. Hannis had a duty to disclose the November 29, 1989 x-ray findings to Mrs. Adams. Dr. Tellis' testimony does not establish that the x-ray was definitely "abnormal:" rather, his testimony as a whole indicates that the determination of whether an x-ray contains "abnormal" findings that must be disclosed to a patient is a judgment call to be made by the one interpreting the x-ray. There is no evidence in the record explaining Dr. Hannis' failure to follow-up on the November 29, 1989 x-ray. He did not testify at the hearings on the exception of prescription nor was he deposed in relation to this case. His records from Mrs. Adams' December 8, 1989 appointment indicate he reviewed the x-ray, but his only notation states, "CXR was normal." It is possible Dr. Hannis misinterpreted the x-ray or may have failed to read the November 29, 1989 radiology report wherein follow-up was recommended. If such were the case, Dr. Hannis' conduct would only amount to negligence and would not trigger application of the third category of contra non valentem. Alternatively, Dr. Hannis may have, in fact, read the report, but he may have determined that the more prominent and denser right hilum was not indicative of an abnormal condition. Regarding this possibility, Dr. Hannis' would have no duty to disclose the x-ray result because, in his determination, there was nothing "abnormal" to disclose. See Rajnowski, 564 So.2d at 676 (Physician need only discuss material findings with his patient.); see also Whitnell v. Silverman, 95-0112 (La.12/6/96), 686 So.2d 23, 34 (Lemmon, J. dissenting) (Although pathology report could have been interpreted to indicate that plaintiff had a cancerous or pre-cancerous condition, treating physician's interpretation of the report as not revealing the presence of cancer cells was "fair and reasonable.") Further, there is no evidence to support a conclusion that Dr. Hannis indeed knew the x-ray contained an "abnormal" finding and that he intentionally or negligently failed to inform Mrs. Adams of that finding.[9]Contrast Kavanaugh v. Long, 29,380 (La.App. 2 Cir. 8/20/97), 698 So.2d 730, 738, n. 14, writ denied, 97-2554 (La.5/15/98), 719 So.2d 67 (Physician altered medical records to conceal the fact that he intended to operate at one level of patient's spine but negligently operated at another level instead.)
Even if Mr. and Mrs. Adams proved the November 29, 1989 x-ray contained an abnormal finding that should have been disclosed to Mrs. Adams, we determine that, absent an ill motive or intent, Dr. Hannis' failure to disclose does not constitute an "ill practice" within the meaning of the third category of contra non valentem. We have been unable to find, nor have we been referred to, any medical malpractice case wherein a physician's action was determined to be an "ill practice" even though the action was taken without an ill motive or intent. Mr. and Mrs. Adams refer to us to jurisprudence interpreting the term "ill practices" as it is used in La. C.C.P. art. 2004, which allows for annulment of a final judgment "obtained by fraud or ill practices." It is true that cases interpreting La. C.C.P. art. 2004 have concluded that an intentional act need not be present to find an "ill practice," or that an "ill practice" can occur "innocently." See Webb v. Polk Chevrolet, Inc., 451 So.2d 139, 142 (La.App. 1 Cir.1984), reversed, 458 So.2d 469 (La.1984); see also State, Through Department of Social Services, OFS v. Jones, 94-2605 (La.App. 1 Cir. 10/6/95), 671 So.2d 404, 407. However, without precedent or a compelling basis for doing so, we decline to expand the third category of contra non valentem by *263 jurisprudential analogy to an unrelated area of law. The supreme court has given no indication that such an expansion is warranted. Further, removing the ill motive or intent requirement from a finding of "ill practices" would substantially lower the standard for proving an "ill practice" below that required to prove "concealment," "misrepresentation," or "fraud," the other types of action that trigger application of the third category of contra non valentem. We see no reason to expand the third category of contra non valentem in this manner.

DECREE
For the foregoing reasons, the judgment of the trial court, granting the exception of prescription filed by Dr. Hannis and Ochsner Clinic, is AFFIRMED. Costs of the appeal are assessed to Mr. and Mrs. Adams.
NOTES
[1] The Honorable Walter J. Rothschild, Judge, Twenty-Fourth Judicial District Court, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] Claims against two additional defendants, Dr. Ann Salmon and Dr. Claude J. Tellis, were voluntarily dismissed by the plaintiffs. Although the Medical Center of Baton Rouge is also named as a defendant in the Adamses' "Petition for Damages Resulting from Medical Malpractice and Request for Review of Claim," any claim against this defendant is not at issue in this appeal.
[3] Dr. Claude Tellis, a pulmonary specialist, testified the right hilum is the area on the chest x-ray that is in the center of the chest and is just to the right of the heart.
[4] The record does not clearly indicate the date upon which the Adamses' petition was filed with the Commissioner of Administration. A date stamp appearing at the top of the first page indicates a date of "July 10," but the applicable year and the office wherein the document was filed is illegible. In their brief to this court, the Adamses represent the petition was filed on August 10, 1998. In their appellate brief, Dr. Hannis and Ochsner Clinic contend the petition was filed July 7, 1998.
[5] Pursuant to La. R.S. 40:1299.47(B)(2)(a),

[a] health care provider, against whom a claim has been filed under the provisions of [Part XXIII. "Medical Malpractice" of Title 40 of the Revised Statutes], may raise any exception or defenses available pursuant to R.S. 9:5628 in a court of competent jurisdiction and proper venue at any time without need for completion of the review process by the medical review panel.
[6] The record contains no proof of independent wrongdoing by Ochsner Clinic. Therefore, the appeal will be decided based on the allegations of wrongdoing made against Dr. Hannis.
[7] In Fontenot, 674 So.2d at 963, the Louisiana Supreme Court noted that it had not previously declared whether the third category of contra non valentem applies to medical malpractice cases. However, the Fontenot court assumed the third category did apply and went on to determine whether its applicability had been triggered under the facts and circumstances of the case before it.
[8] In brief, Mr. and Mrs. Adams also contend "[n]ot only did Dr. Hannis not tell [Mrs. Adams] that she had an abnormal X-ray, he assured her that the chest X-ray was normal." However, at the April 5, 1999 hearing on the defendants' exception of prescription, Mrs. Adams testified that she was never told the results of the November 29, 1989 chest x-ray.
[9] In fact, Mr. and Mrs. Adams concede, in brief, that "there is no proof of an intentional concealment on the part of Dr. Hannis."