| WILLIAMS, Judge.
The plaintiff, South Central Aviation, Inc.,[1] appeals the trial court’s judgment sustaining the defendant’s peremptory exception of prescription and dismissing the *1086 plaintiffs claim. For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY
Prior to his death, the decedent, J. Benjamin Wells,[2] and the plaintiff, Ben G. O’Neal entered into an agreement whereby O’Neal would purchase and operate an airplane for the decedent for the purpose of transporting freight from the United States to Mexico.
In 1981, O’Neal operated a company in McAllen, Texas, that transported freight by airplane from the United States to Mexico. In his deposition, O’Neal testified that his attorney and long-time friend, J. Benjamin Wells, was interested in this type of business and asked O’Neal to purchase an airplane for him so that he could get started in the business. According to O’Neal, the decedent had planned to sell his law practice in Bossier City, Louisiana and relocate to McAllen, Texas to receive assistance from O’Neal in starting an air freight business similar to the business that O’Neal operated. O’Neal testified that because the decedent did not relocate at the time that they had anticipated, the decedent asked O’Neal to begin operating the airplane for him.
According to O’Neal, he and the decedent entered into an oral agreement whereby O’Neal would advance the decedent the purchase price of the airplane, purchase and operate the airplane for the benefit of the decedent, account for the revenue produced from the operation of the airplane and retain the revenue until | ¡..such time as the full amount of the purchase price of the airplane and interest had been paid.
O’Neal purchased a DC-3 airplane for $150,700 with funds provided by his company, South Central Aviation, Inc. O’Neal testified that because the decedent did not have the required FAA operating certificate, the decedent requested that O’Neal purchase the airplane under his certificate. The airplane was owned by Air Tram Leasing, Inc. (“Air Tram”),[3] a company which was created solely for the purpose of retaining ownership of the airplanes O’Neal used in his freight transport business. Air Tram leased the airplane in question to South Central Aviation, Inc. O’Neal operated the airplane for the decedent, and, as a result, amassed $41,960 in revenues, which he applied toward the balance of the purchase price of the airplane.
Thereafter, O’Neal requested that the decedent reduce their agreement to writing. Wells executed a written agreement dated December 1, 1981, in which he promised to pay to the order of South Central Aviation, Inc. $113,000, the balance due on the purchase price of the airplane. Wells also agreed to pay 14% per annum interest, and instructed the “payee to receive all revenues from charter flights until paid in full.” O’Neal testified that in 1982, upon Wells’ request, he sold the airplane and applied $66,000, the proceeds from the sale, to the remaining balance. No subsequent payments were made.
Benjamin Wells died in May 1988. According to O’Neal, he had not made a demand for payment prior to his filing suit on May 10, 1990. In response to *1087 IsO’Neal’s petition, the defendant filed a motion for summary judgment and/or peremptory exceptions of prescription and no right of action. The defendant argued that because South Central Aviation, Inc. provided the funds to purchase the airplane, O’Neal had no personal right of action. On January 16, 1991, South Central Aviation, Inc. and Ben O’Neal filed a petition to recover $108,740, the balance due on the purchase price of the airplane, plus 14% per annum interest on the unpaid balance. In response to this claim, the defendant filed a declinatory exception of lis pendens and peremptory exceptions of no right of action and prescription. At the request of the plaintiffs, the trial court ordered the cases consolidated. In a later ruling, the trial court sustained the defendant’s exception of no right of action as to Ben O’Neal, and the exception of prescription as to South Central Aviation, Inc. Both actions were dismissed. In its “Written Reasons for Decision,” the trial court stated:
“This is either a suit on a promissory note or a suit for money loaned, or a suit on a contract.... Wells promised to pay O’Neal for the purchase of this airplane. O’Neal alleges that Wells has not paid him. In the opinion of the court, this is a suit for money loaned and under Civil Code Article 3494 has prescribed.”
South Central Aviation, Inc. appeals the judgment dismissing its action on the exception of prescription.
DISCUSSION
The plaintiff contends the trial court erred in finding that the nature of the contract between plaintiff and the decedent was one of money lent, which prescribes in three years, rather than a personal contract which prescribes in ten years. The plaintiff also contends the trial court erred in failing to apply the doctrine of contra non valentón to the facts of the case.
The nature of a cause of action must be determined before it can be decided which prescriptive period is applicable. Hampton v. Hibernia National Bank, 598 So.2d 502 (La.App. 2d Cir.1992); State of Louisiana, Through Department of Highways v. City of Pineville, 403 So.2d 49 (La.1981). Where the parties to an agreement are competent to make the agreement either one of sale or loan as they see fit, the courts may, under certain circumstances, look through the form in which it is expressed and determine the parties’ real intention from a consideration of those circumstances. Louisiana Contracting Co. v. Board of Com’rs of Port of New Orleans, 150 La. 559, 91 So. 43 (1922).
However, under LSA-R.S. 13:3721, commonly known as the Louisiana Dead Man’s Statute, parol evidence can be admitted to prove a claim against the decedent only if a suit or other action is filed within one year of the decedent’s death. Section 3721 provides:
Parol evidence shall not be received to prove any debt or liability of a deceased person against his succession representative, heirs, or legatees when no suit to enforce it has been brought against the deceased prior to his death, unless within one year of the death of the deceased:
(1) A suit to enforce the debt or liability is brought against the succession representative, heirs, or legatees of the deceased;
(2) The debt or liability is acknowledged by the succession representative as provided in Article 3242 of the Code of Civil Procedure, or by his placing it on a tableau of distribution, or petitioning for authority to pay it;
(3) The claimant has opposed a petition for authority to pay debts, or a tableau of distribution, filed by the succession representative, on the ground that it did not include the debt or liability in question; or
(4) The claimant has submitted to the succession representative a formal proof of his claim against the succes *1088 sion, as provided in Article 3245 of the Code of Civil Procedure.
The provisions of this section cannot be waived impliedly through the failure of a litigant to object to the admission of evidence which is inadmissible thereunder. (Emphasis added)
The purpose of LSA-R.S. 13:3721 is to prevent unfounded claims from being filed |sagainst a succession. Succession of Bearden, 27,007 (La.App.2d Cir.6/21/95), 658 So.2d 746.
In the instant case, the plaintiff has sought to recover a debt from a dead person’s estate, but has failed to comply with the statute. Consequently, the only evidence that the district court could have considered in determining the nature of the agreement between the parties is the written document; parol evidence is clearly inadmissable.
Plaintiff argues that the document is not a “promissory note” because it is not payable on demand or at a definite time as required by LSA-R.S. 10:3-104.[4] We agree that the document in question does not indicate when it is payable. However, under LSA-R.S. 10:3-108, a promise or order is “payable on demand” if it does not state any time of payment.[5] Therefore, we conclude that the agreement between the plaintiff and the decedent is a negotiable instrument, payable on demand, with a prescriptive period of five years.[6] An action on money lent is subject to the libera-tive prescription of three years. LSA-C.C. art. 3494(3). The plaintiff asserted its claim against the decedent’s estate in January 1991, over nine years after the decedent executed the agreement. Consequently, the plaintiffs |ficlaim has prescribed. This assignment of error is without merit.

Contra Non Valentem

The plaintiff contends that if this court determines that the cause of action was for money lent, then the doctrine of contra non valentem is applicable in this case. He argues that an attorney-client relationship existed between the plaintiff and the decedent, and the decedent breached a fiduciary duty to the plaintiff to inform the plaintiff of the applicable prescriptive period.
Contra non valentem is a judicially-created exception to the general rule of prescription. This doctrine provides that prescription does not run against a party unable to act. The doctrine recognizes that prescription will not commence in a situation where the debtor effectually prevented the creditor from availing himself of the cause of action. Ainsworth v. Bulloch, 32,536 (La.App.2d Cir.12/22/99), 749 So.2d 886; Wimberly v. Schumpert Medical Center, 25,957 (La.App.2d Cir.8/17/94), 641 So.2d 1016.
O’Neal testified in his deposition that he had known the decedent since they were children, and that the decedent was “probably the closest friend that I had.” He further testified that, on several occasions, the decedent had represented him in civil matters. According to O’Neal, there were occasions when the parties engaged in mutual dealings which involved the exchange of money; however, these dealings did not arise out of an attorney-client relationship.
*1089 During his testimony, O’Neal distinguished those transactions during which the decedent acted as his attorney from those instances when they engaged in transactions which stemmed from their friendship. The plaintiff failed to present evidence to establish that the instant transaction arose out of an attorney-client relationship or that the decedent owed a fiduciary duty to the plaintiff in regard to this particular agreement. Moreover, the record does not reflect that there was any action on the part of the decedent which prevented O’Neal from availing himself 17of the cause of action at any time prior to the deadline for filing suit. Therefore, we conclude that no attorney-client relationship existed between the parties in regard to this particular transaction, and the doctrine of contra non valentem is not applicable.
CONCLUSION
For the foregoing reasons, the judgment of the trial court sustaining the defendant’s exception of prescription and dismissing the plaintiffs claim is affirmed. Costs of this appeal are assessed to the plaintiff, South Central Aviation, Inc.
AFFIRMED.

. This suit was originally filed by the plaintiff, Ben O'Neal. Thereafter, South Central Aviation, Inc., a company owned by O’Neal, intervened in the suit and subsequently filed an independent action based on similar issues. The district court consolidated the cases for trial.

. Suit was filed against the decedent’s estate, and James Benjamin Wells, II, the provisional administrator of the succession, was named as defendant.

. O’Neal admitted that some of his'planes were seized by the Mexican government because they had landed in an unauthorized area in Mexico. However, pursuant to a treaty between the United States and Mexico, vehicles that were rented from companies in the United States and seized in Mexico would be returned to the rental company. Therefore, Benjamin Wells assisted O'Neal in forming Air Tram Leasing for the purpose of leasing the planes to O’Neal. O’Neal testified in his deposition that Air Tram Leasing is owned by Ray Mayo, Sr. O’Neal also admitted that his company’s activities in Mexico were illegal because the company was conducting business in Mexico without the authority of the Mexican government.

. Under this statute, in order for a writing to be a negotiable instrument, it must be signed by the maker, contain an unconditional promise to pay a sum certain in money, be payable on demand or at a definite time, and be payable to order or bearer.

. LSA-R.S. 10:3-108(a) provides:
(a) A promise or order is "payable on demand” if it (i) states that it is payable on demand or at sight, or otherwise indicates that it is payable at the will of the holder, or (ii) does not state any time of payment.

.LSA-C.C. art. 3498 provides:
Actions on instruments, whether negotiable or not, and on promissory notes, whether negotiable or not, are subject to a liberative prescription of five years. This prescription commences to run from the day payment is exigible.