# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CW04-81


**JAMIE HEBERT, ET AL.**

**VERSUS**

**CALCASIEU PARISH SCHOOL BOARD**


\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NUMBER 2003-1905
HONORABLE G. MICHAEL CANADAY, DISTRICT JUDGE


\*\*\*\*\*\*\*\*\*\*


## BILLIE COLOMBARO WOODARD
## JUDGE


\*\*\*\*\*\*\*\*\*\*


Court composed of Chief Judge Ulysses G. Thibodeaux, Billie Colombaro Woodard, and Oswald A. Decuir, Judges.


**WRIT DENIED.**


Terrell DeWight Fowler
Attorney at Law
625 Kirby St.
Lake Charles, Louisiana 70601
(337) 433-9900
COUNSEL FOR PLAINTIFF/RESPONDENT:
    Jamie Hebert
    Taylor Hebert

Christopher M. Trahan
Raggio, Cappel, Chozen & Berniard
Post Office Box 820
Lake Charles, Louisiana 70602
(337) 436-9481
COUNSEL FOR DEFENDANT/APPLICANT:
    Calcasieu Parish School Board

WOODARD, Judge.

Calcasieu Parish School Board (School) seeks supervisory writs from the trial court's judgment which denied its exception of prescription. We deny writs and remand the matter for further proceedings.

* * * * *

This case involves Ms. Jamie Hebert's young daughter, Taylor, who fell during recess while in the School's care and custody. She was injured when her head struck a concrete pad. The accident occurred on September 27, 2001. Taylor's initial injuries consisted of a hemorrhage or contusion and a nondisplaced skull fracture. Subsequently, she had some "infrequent episodes of unusual behavior such as bed wetting, some clumsiness and complaints of dizziness," but neither Ms. Hebert nor any examining physician ever associated any of these problems with the accident or a head injury of any kind.

However, on March 7, 2003, an EEG revealed that Taylor had an epileptic lesion, allegedly from the September 27th fall at school.

Accordingly, Ms. Hebert, individually and as natural tutrix of her minor child, Taylor, filed suit against the School on April 10, 2003. The School filed an exception of prescription, which the trial court denied. Consequently, the School petitions this court to exercise our supervisory jurisdiction to overturn the trial court's decision and grant the exception.

* * * * *

**PRESCRIPTION**

Louisiana Civil Code Article 3492, in pertinent part, provides:

> Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained.

2

The instant action is a negligence action, or tort, and, therefore, delictual.[1] The School argues that prescription began to run against Ms. Hebert on September 27, 2001, the date Taylor fell and injured her head. Ms. Hebert's claim has, in fact, prescribed on the face of the petition. Consequently, she has the burden of proving that prescription was suspended or interrupted.[2]

The jurisprudential doctrine of *contra non valentum agere nulla currit praescriptio* recognizes that "in some circumstances, equity and justice require that the prescription 'be suspended because the plaintiff was effectually prevented from enforcing his rights for reasons external to his own will.'"[3] Prescription will not run against a person who is unable to act which means unable to file suit.[4] The *contra non valentum* doctrine contemplates four different scenarios in which a person is unable to file suit, only one of which is relevant in the instant case. This scenario, often referred to as the "discovery rule," suspends prescription where a plaintiff neither knew she had a cause of action nor could have learned of it through reasonable diligence.[5] The heart of the inquiry focuses on the reasonableness of a plaintiff's action or inaction.[6]

Ms. Hebert claims that she had no reason to know of her cause of action for Taylor's current injuries until the EEG revealed Taylor's lesion. However, "in cases in which a plaintiff has suffered some but not all of his damages, prescription runs from the date on which he first suffered actual and appreciable damage, even though he may thereafter come to a more precise realization of the damages he has already incurred or incur further damage as a result of the completed tortious act."[7] The School argues that Ms. Hebert had sufficient knowledge, immediately after the fall,

---

[1]*Myers v. Dronet*, 01-5 (La.App. 3 Cir. 6/22/01), 801 So.2d 1097.

[2]*Lima v. Schmidt*, 595 So.2d 624 (La.1992).

[3]*Touchet v. Baker Hughes, Inc.*, 98-749, p. 5 (La.App. 3 Cir. 2/3/99), 737 So.2d 821, 824 (quoting *Wimberly v. Gatch*, 93-2361 (La. 4/11/94), 635 So.2d 206).

[4]*Fontenot v. ABC Ins. Co.*, 95-1707 (La. 6/7/96), 674 So.2d 960.

[5]*Id.*

[6]*Jordan v. Employee Transfer Corp.*, 509 So.2d 420 (La.1987).

[7]*Harvey v. Dixie Graphics*, 593 So.2d 351, 354 (La.1992) (citations omitted).

to know that she had a cause of action against the School and that Taylor suffered appreciable damages sufficient to start the tolling of prescription at that time. It points out that Taylor spent two days in the hospital at the time of the accident.

Nonetheless, at that time, Taylor's hemorrhage had healed even before the hospital released her and Ms. Hebert testified that the physicians told her the non-displaced fracture would heal without any treatment. Thus, she actually had knowledge only of two injuries, both of which were temporary and seemingly minor. The epileptic lesion is a wholly separate injury that Ms. Hebert was unaware of until she received the EEG results.

We find our prior decision in *Bourque v. Louisiana Health Systems Corporation*[8] instructive. In *Bourque*, the plaintiff contracted Hepatitis B from a blood transfusion in 1975. In 1998, she became aware that she had also contracted Hepatitis C, likely from the same blood transfusion. We considered that her claim for contraction of Hepatitis C, filed in 1999, within one year of the date she learned she had Hepatitis C, was timely filed even though she had actually contracted it in 1975. Certainly, at the time of the transfusion, she had a claim for contracting Hepatitis B, but we reasoned that Hepatitis C is a separate and distinct medical condition and "a plaintiff cannot be precluded from asserting a claim for a completely different disease diagnosed at a later time, from one contracted previously."[9]

We find the instant case similar in that the epileptic lesion is a totally separate medical condition from a hemorrhage or non-displaced skull fracture. Accordingly, we agree with the trial court that Ms. Hebert's inaction, or choice not to immediately file a law suit for Taylor's minor injuries, was reasonable. She did not learn of Taylor's epileptic lesion, a serious and permanent condition, until March 7, 2003. Thus, she timely filed her cause of action within one year of that date.

### CONCLUSION

We find that Ms. Hebert's choice to refrain from filing suit for Taylor's initial diagnosis of minor injuries should not preclude her from filing suit for Taylor's

---

[8]03-56 (La.App. 3 Cir. 4/30/03), 845 So.2d 584, *writs denied*, 04-1866, 04-1882 (La. 10/31/03), 857 So.2d 480, 481.

[9]*Id.* at 588.

epileptic lesion, which was unknown to her until March 7, 2003. Therefore, we deny to grant the School's writ. We cast the costs of these proceedings on Calcasieu Parish School Board.

**WRIT DENIED.**

5