972 So.2d 350 (2007)
DOMINION EXPLORATION & PRODUCTION, INC.
v.
Kenneth M. WATERS, III, Fluids Management, Ltd., Borehole Control L.L.C. and K.W. Management, L.L.C.
Dominion Exploration & Production, Inc.
v.
Kenneth M. Waters, III, Fluids Management, Ltd., Borehole Control L.L.C. and K.W. Management, L.L.C.
Nos. 2007-CA-0386, 2007-C-0287.
Court of Appeal of Louisiana, Fourth Circuit.
November 14, 2007.
*353 James E. Wright III, Jones Walker Waechter Poitevent Carrere & Denegre, L.L.P., New Orleans, LA, for Plaintiff/Appellant.
Richard T. Simmons, Jr., John Shea Dixon, Hailey McNamara Hall Larmann & Papale, L.L.P., Metairie, LA, David J. Calogero, Davidson, Meaux, Sonnier & McElliogott, Lafayette, LA, and Mickey P. Landry, Landry & Swarr, L.L.C., New Orleans, LA, for Defendants/Appellees.
(Court Composed of Judge DENNIS R. BAGNERIS, SR., Judge MAX N. TOBIAS, JR., and Judge LEON A. CANNIZZARO, JR.).
MAX N. TOBIAS, JR., Judge.
The plaintiff, Dominion Exploration and Production, Inc. ("Dominion"), appeals the trial court's granting of an Exception of Prescription in favor of Defendants, Fluids Management, Ltd. ("FML"), Kenneth M. Waters, III ("Waters"), Borehole Control, L.L.C. ("Borehole"), and K.W. Management, L.L.C. ("K.W.Management") (herein after collectively "the Waters' Companies"), on the basis that the latest date prescription could have commenced was 6 April 2005, and, thus, the tort claims alleged in Dominion's Petition for Damages filed on 3 August 2006, have prescribed. The trial court dismissed all claims filed by Dominion against the Waters' Companies, as based solely in tort. The trial court likewise dismissed Dominion's tort claims and claims asserted under the Louisiana Unfair Trade Practices Act against FML and Waters.[1] For the following reasons, we affirm the trial court's judgment.
I. Background and Procedural History
The basic facts of this case are largely not in dispute. The plaintiff, Dominion, is engaged in the business of oil and gas exploration and production in Louisiana and other locations. In May 2002, Dominion, through a staffing company, Stokes and Spiehler, Inc., hired Waters as a full-time subcontractor/ consultant mud engineer responsible for overseeing and managing drilling mud programs utilized by Dominion in Louisiana. Waters worked directly with Dominion's mud engineers and was charged with the authority to make purchases of goods and services for Dominion. The defendant, FML, a vendor, is engaged in the sale of drilling fluid additives and other oil field products and services in Louisiana.
This suit, filed on 3 August 2006, arises out of Dominion's attempt to recoup monies associated with an alleged kickback scheme existing between Waters and FML that purportedly took place between September 2002 and December 2003. Specifically, in June 2002, at the direction of Waters, Dominion began using FML as a vendor for its drilling products and engineering *354 services. Six months later, in January 2003, Dominion entered into a Master Service Contract with FML, which set forth the terms governing all work and services performed by FML for Dominion.[2] Between 8 August 2002 and 12 September 2003, Dominion paid $1,744,594.38 to FML for oil field products and engineering services.
In June 2003, concerned about the high costs it was incurring for mud drilling purchases from FML pursuant to the Master Service Contract, Dominion requested a vendor audit of FML for the calendar years 2002 and 2003. The vendor audit took place on 25-26 June 2003 at FML's Houston office. Dominion's Audit Manager, James Rooney, a certified public accountant and certified fraud examiner, was specifically looking for potential conflicts of interests between FML and Dominion employees.[3] In this regard, at the outset of the audit, FML completed a written vendor audit questionnaire, which identified four Dominion employees with whom FML had contact in soliciting business from Dominion. One of the employees named was Defendant, Waters.[4] Dominion has alleged that FML did not allow it to conduct a proper vendor audit because FML only allowed Dominion access to documents Dominion already had in its possession, such as summaries of FML invoices to Dominion and records of payments made by Dominion to FML. According to Dominion, FML refused to allow review of any original entertainment and expense reports or disbursement records in order that Dominion could ascertain the existence of any potential conflicts of interest, failure to disclose, or disloyalty by any Dominion representative on any transaction between Dominion and FML. To the contrary, FML contends that it provided Dominion with access to all of its records pertaining to business FML conducted with, or was related to, Dominion.
Following the audit, on 8 July 2003, Dominion held a meeting with Waters seeking information and clarification regarding his relationship with FML. Dissatisfied with Waters' responses and the alleged development of "trust issues," Dominion terminated Waters' employment during this meeting. On the same day, Dominion terminated its Master Service Agreement with FML. The record reflects that for three years  between 8 July 2003 and 18 July 2006  except for a single e-mail sent from Waters to his former supervisor at Dominion, James Abercrombie, in September 2003,[5] absolutely no contact *355 whatsoever was had between Dominion and Waters.
In August 2003, still trying to pursue its audit rights against FML, Dominion sought to limit the scope of its FML vendor audit by sending a letter to FML seeking specific information related to the four Dominion employees listed by FML in the vendor audit questionnaire, including information concerning FML's relationship with Waters, and two of the Waters' companies, namely, defendants, Borehole and K.W. Management. According to Dominion, FML again refused to provide all of the information requested. Dissatisfied with the information produced by FML in the audit, coupled with its belief that FML was withholding information regarding potential conflicts of interest, on 17 March 2004, Dominion filed suit against FML in the Twenty-Fourth Judicial District Court for the Parish of Jefferson to enforce its audits rights under the Master Service Contract (hereinafter "Audit Litigation").
On 6 April 2005, in response to written discovery propounded by Dominion to FML in the Audit Litigation, FML produced a set of invoices disclosing that, between 2 September 2002 and 11 December 2003, FML made payments to Waters and the Waters' Companies totaling $210,321.02. FML represented that these invoices related to consulting services, testing, mileage, and commissions on biobase product development conducted by Waters, completely unrelated to work Waters performed for Dominion. During a follow-up meeting held four months later between Dominion and FML, on 22 August 2005, FML informed Dominion that no back-up documents ever existed that would verify the legitimacy of the work performed for it by the Waters' Companies as reflected in the invoices FML had previously produced.
On 18 July 2006  eleven months after Dominion was told that no verifying documentation for the payments ever existed, and after nearly three years of having no contact with Waters  Dominion confronted Waters with evidence of the $210,321.02 in payments. At that time, Waters admitted ownership of the Waters' Companies and to receipt of the payments from FML. Waters contended the payments were for work his companies preformed for FML, unrelated to Waters' work for Dominion.[6] In this meeting, Waters advised that all of his documentation, which would verify the validity of the subject invoices, was destroyed in Hurricane Katrina.
On 3 August 2006, one year and four months after Dominion first learned of the $210,321.02 in payments made by FML to Waters and/or the Waters' Companies, Dominion filed the instant action against FML, Waters, and the Waters' Companies alleging five causes of action: breach of fiduciary duties, breach of contract, wrongful concealment, unjust enrichment, and violation of Louisiana's Unfair Trade Practices and Consumer Protection Law ("LUTPA"), La. R.S. 51:1401, et seq.[7] Subsequently, the defendants filed peremptory exceptions of no cause of action and prescription, and, alternatively, dilatory exceptions of vagueness or ambiguity of the petition.
On 21 October 2006 and 11 January 2007, the trial court heard these exceptions. At the conclusion of the 21 October 2006 hearing, the defendants' exceptions of no cause of action, vagueness, and ambiguity *356 of Dominion's Petition were denied. The court also denied defendants' exceptions of prescription relating to Dominion's claims arising under a breach of fiduciary duty and contract law. The trial court continued to 11 January 2007 the hearing on the defendants' exceptions of prescription relating to Dominion's alleged tort and LUTPA claims for the purpose of taking testimony. At the conclusion of the 11 January 2007 hearing, the trial court granted the defendants' peremptory exceptions of prescription as it related to the tort and LUTPA claims pled by Dominion assigning oral reasons. Judgment was entered by the trial court on 7 February 2007 resulting in a partial dismissal of Dominion's claims against FML and Waters, and complete dismissal of Dominion's claims against the Waters' Companies.[8]
Dominion timely filed the instant appeal from the trial court's judgment granting the peremptory exception of prescription and dismissing Borehole and K.W. Management, with prejudice. Dominion also timely filed an Application for Supervisory Writs from the trial court's judgment rendered in favor of FML and Waters, dismissing Dominion's alleged tort and LUPTA claims against them, with prejudice. Dominion's appeal and writ application were consolidated herein.

Standard of Review
This Court, in Parker v. B & K Construction Co., Inc., 06-1465 (La.App. 4 Cir. 6/27/07), 962 So.2d 484, reiterated the appellate standard of review for a grant of an exception of prescription:
In reviewing a peremptory exception of prescription, an appellate court will review the entire record to determine whether the trial courts finding of fact was manifestly erroneous. Davis v. Hibernia National Bank, 98-1164 (La.App. 4 Cir. 2/24/99), 732 So.2d 61. When evidence is received on the trial of the peremptory exception of prescription, the factual conclusions of the trial court are reviewed by the appellate court under the manifest error-clearly wrong standard as articulated in Stobart v. State Through Dept. of Transp. and Development, 617 So.2d 880 (La.1993).
06-1465, p. 2, 962 So.2d at 485, citing Katz v. Allstate Insurance Co., 04-1133, p. 2 (La.App. 4 Cir. 2/2/05), 917 So.2d 443, 444. See also Carter v. Haygood, 04-0646, p. 9 (La.1/19/05), 892 So.2d 1261, 1267. If the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Carter, 04-0646, p. 9, 892 So.2d at 1267.
II. Law and Analysis
In the case sub judice, Dominion's claims for wrongful concealment and unjust enrichment are delictual actions subject to liberative prescription of one year. La. C.C. art. 3492. Moreover, Dominion's claims for alleged violations under LUPTA are also subject to a one-year prescriptive period. La. R.S. 51:1409 E. The one-year limitation period in LUPTA is preemptive, rather than prescriptive. Canal Marine Supply, Inc. v. Outboard Marine Corp. of *357 Waukegan, Ill., 522 So.2d 1201 (La.App. 4 Cir.1988). These statutes, like all prescription statutes, are strictly construed against prescription and in favor of maintaining the cause of action. Wimberly v. Gatch, 93-2361 (La.4/11/94), 635 So.2d 206, 211.
Ordinarily, prescription commences when a plaintiff obtains "actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort." Bailey v. Khoury, 04-0620, 04-0647, 04-0684, p. 10 (La.1/20/05), 891 So.2d 1268, 1276, citing Campo v. Correa, 01-2702, p. 11 (La.6/21/02), 828 So.2d 502, 510. A prescriptive period will begin to run even if the injured party does not have actual knowledge of facts that would entitle him to bring a suit as long as there is constructive knowledge of same. Campo, supra at p. 12, 828 So.2d at 510. An injured party has constructive notice when he or she possesses information sufficient to incite curiosity, excite attention, or put a reasonable person on guard to call for inquiry, and includes knowledge or notice of everything to which that inquiry might lead. Id. The ultimate issue is the reasonableness of the plaintiff's action or inaction in light of his education, intelligence, and the nature of the defendant's conduct. Id.; Bailey, 04-0620, 04-0647, 04-0684, p. 10, 891 So.2d at 1276.
The party raising an exception of prescription has the burden of proving that the claim has prescribed. Campo, 01-2702, p. 7, 828 So.2d at 508. However, when it appears on the face of the pleadings that prescription has run, the burden shifts to the opposing party to show that prescription was suspended or interrupted. Id. Dominion's petition alleges that, beginning in June 2003, when it noticed that FML's drilling costs were high, it began to suspect a conflict of interest  or a potential "kickback" scheme  existing between Waters and FML. The petition further avers that, in 2004, Dominion filed suit against FML in the Twenty-Fourth Judicial District Court seeking to compel an audit of FML's business activities with Dominion for the years 2002 and 2003, and that on 6 April 2005, FML produced invoices, without supporting documentation, confirming that it made payments to Waters from August 2002 to May 2003, totaling $210,321.02. FML represented that the payments were made for work performed by Waters and the Waters' Companies unrelated to Waters' work for Dominion. Dominion's petition further alleges that Dominion finally had the information it needed to prove its three-year-old suspicion of a kickback scheme when, in a meeting held between FML and Dominion on 22 August 2005, FML advised that no back-up documents ever existed supporting that Waters and/or the Waters' companies actually performed the work for which the FML payments were made. Dominion filed suit on 3 August 2006, within one year of its meeting with FML. Based solely on the allegations set forth in the petition, it appears that Dominion's claim was filed timely. Thus, the defendants bear the burden of proving that Dominion's tort and LUTPA claims are barred by prescription. Bailey, 04-0620, 04-0647, 04-0684, p. 10, 891 So.2d at 1275.
At issue in the instant case is the date upon which Dominion had constructive knowledge of its tort and LUTPA claims against the defendants sufficient to begin the running of prescription on the claims. FML, Waters, and the Waters' Companies contend that, applying the general rules of prescription, at the very latest, Dominion had actual, or at least constructive, knowledge of its alleged tort and LUTPA claims against them on 6 April 2005 when FML produced invoices with no supporting documentation *358 evidencing payments it made to Waters and the Waters' Companies between 2002 and 2003 of $210,321.02. Thus, the defendants argue, and the trial court agreed, that Dominion's suit filed one year and four months after this date is prescribed.
In an effort to extend the commencement of the running of prescription beyond 6 April 2005, Dominion seeks to avail itself of the doctrine of contra non valentum non currit praescriptio. Simply put, this means that prescription does not begin to run against a person who cannot bring his suit. Carter, 04-0646, p. 11, 892 So.2d at 1268. Contra non valentum is a jurisprudentially-created exception to the general rules of prescription. The doctrine is based on the premise that, in some circumstances, equity and justice require that prescription "be suspended because the plaintiff was effectually prevented from enforcing his rights for reasons external to his own will." Wimberly, 635 So.2d at 211.
In Plaquemines Parish Commission Council v. Delta Development Co., Inc., 502 So.2d 1034, 1054-55 (La.1987), the Louisiana Supreme Court recognized four instances where contra non valentum is applied to prevent the running of prescription: (1) where there is some legal cause which prevented the courts or their officials from taking cognizance of or acting on the plaintiff's action; (2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting; (3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; or (4) where the cause of action is neither known nor reasonably knowable by the plaintiff even though this ignorance is not induced by the defendant. See also Renfroe v. State ex rel. Dept. of Transp. and Development, 01-1646, p. 9 (La.2/26/02), 809 So.2d 947, 953. These categories, thus, allow "the courts to weigh the `equitable nature of the circumstances in each individual case' to determine whether prescription will be tolled." Carter, 04-0646, p. 12, 892 So.2d at 1268.
A. Contra Non Valentum
By its first assignment of error, Dominion contends the trial court erred when it failed to find that the third category of contra non valentum applies in this case because the defendants' actions between 2003 and 2006, including continuously concealing the existence and true nature of $210,321.02 of payments made by FML to Waters, lulled Dominion into inaction and convinced Dominion not to file suit against them during these three years. Alternatively, Dominion argues that the trial court erred in refusing to apply the fourth category of the doctrine, commonly referred to as the "discovery rule," because Dominion did not have sufficient "probable cause" to file suit before 22 August 2005 when it first learned that there were no documents to support the payments FML made to Waters and the Waters Companies to substantiate its three-year-old suspicions of a kickback scheme.
The third category of contra non valentum applies when the defendant has done some act effectually to lull the victim into inaction and prevent him from availing himself of his cause of action. Fontenot v. ABC Ins. Co., 95-1707, p. 4 (La.6/7/96), 674 So.2d 960, 963. To trigger application of the third category, a defendant's conduct that keeps the victim in ignorance must rise to the level of concealment, misrepresentation, fraud, or ill practices. Id. Where the plaintiff is able to establish such conduct, prescription is suspended until the plaintiff is made aware of the truth of the matter. Id. At the hearing *359 on the exceptions of prescription in the case sub judice, the trial court defined the issue before it, for purposes of the application of the doctrine of contra non valentum as follows:
[W]hether or not there was sufficient information in April [2005] based on the documentation that was produced; whether or not there was some stalling and/or frustration of the process brought on by [FML and Waters'] action or inaction; and/or whether or not in August [2005]  any time between April and August [Dominion] got more information that should have triggered a later date.
After listening to the testimony of witnesses and the argument of counsel, the trial court determined that, if the third category of contra non valentum applied to suspend the running of prescription of Dominion's tort claims, it ceased on 6 April 2005, when FML disclosed the invoices evidencing payments made to Waters and the Waters' Companies in 2002 and 2003, without any supporting documentation, and thus, the trial court concluded Dominion's tort claims filed one year and four months later had prescribed.
Next we proceed to determine whether the trial court's ruling was manifestly erroneous based on the record evidence as a whole. Based on our review of the entire record, we conclude that it was not.
At the hearing, counsel for Dominion conceded that the third category would not apply if, at the time FML produced the invoices, FML had not maintained that the payments to the Waters' Companies were for legitimate services actually performed by Waters unrelated to Waters' work for Dominion, effectually lulling Dominion into inaction. However, the testimony of the witnesses reveals that from July 2003 to the filing of suit in August 2006, at no time was Dominion ever in a state of "inaction." At all times pertinent, beginning in June 2003, Dominion suspected a conflict of interest, or potentially a kickback scheme, existing between FML and Waters. At no time during those years does any evidence exist or suggestion that Dominion believed otherwise. This suspicion is what prompted Dominion's vendor audit of FML in June 2003; the confrontation and termination of Waters in July 2003; the filing of the Audit Litigation in May 2004; the confrontation of Waters in July 2006; and, the filing of the instant suit in August 2006. That FML and Waters made no concessions as to Dominion's allegations of kickbacks and have chosen to defend that they had a legitimate business relationship unrelated to Dominion during the time period at issue is insufficient evidence of the kind of concealment or ill practice required to trigger the application of the third category of contra non valentum. See High Tech Communications v. Panasonic Co., 1995 WL 120154, *2 (E.D.La.1995); In re Ford Motor Co. Bronco II Product Liability Litigation, 982 F.Supp. 388 (E.D.La. 1997). Moreover, the record is completely devoid of any evidence that either FML or Waters engaged in any conduct  specifically after 6 April 2005, when Dominion gained evidence that payments were made  that prevented Dominion from availing itself of a cause of action or that would trigger a later date for the commencement of the running of prescription.[9] We fail to find exceptional circumstances in this case that would warrant the application of the third category of contra non valentum.
*360 Alternatively, Dominion contends the fourth category of contra non valentum applies because, prior to its learning from FML on 22 August 2005 that there was never any substantiating documentation verifying that the payments FML made to Waters and the Waters' Companies was for work that was actually performed, Dominion had no definitive proof of its suspected kickback scheme, and thus, no probable cause to file suit. Dominion filed the instant suit within one year of 22 August 2005.
We agree with the trial court's finding that the record fails to support application of the fourth category of contra non valentum to extend the commencement of the running of prescription beyond 6 April 2005. Under the fourth category, prescription does not begin to run until the plaintiff knows sufficient facts and has a reasonable basis for filing suit against a certain defendant or set of defendants. Chaney v. State of Louisiana, Through the Dept. of Health and Human Resources, 432 So.2d 256 (La.1983). Moreover, it is well settled that the principle of contra non valentum will not exempt a plaintiff's claim from running if his ignorance is attributable to his own willfulness, neglect, or unreasonableness. See Campo, supra at p. 12, 828 So.2d at 511. In determining when the plaintiff should know of the basis for his claims, the focus is on the reasonableness of the plaintiff's action or inaction. Beth Israel v. Bartley, Inc., 579 So.2d 1066, 1072 (La.App. 4 Cir.1991). A plaintiff will be deemed to know what he could have learned though reasonable diligence. Id. See also Renfroe, 01-1646, p. 8, 809 So.2d at 953. Generally, the prescriptive period commences when enough notice to call for an inquiry of a claim exists, not when an inquiry reveals the facts or evidence to sufficiently prove the claim. See Babineaux v. State, Dept. of Transp. and Dev., 04-2649, p. 5 (La.App. 1 Cir. 12/22/05), 927 So.2d 1121, 1125.
With these principles in mind, we turn to the record to determine whether Dominion exercised reasonable diligence to discover the basis of their alleged tort and LUTPA claims. As discussed above, as early as June 2003, Dominion was suspicious of a potential conflict of interest between Waters and FML. Yet, other than a confrontation with Waters where they terminated his employment in July 2003, Dominion made absolutely no effort to obtain additional information or verification from Waters until three years later in July 2006. This second confrontation took place more than fifteen months after receiving notice that substantial payments were made to Waters by FML during the time Waters was employed by Dominion and directing Dominion to purchase supplies and services from FML. At the hearing on the exceptions, Dominion offered no testimony or evidence that even remotely justifies or even reasonably explains this delay in seeking critical information to confirm or dispel its three-year-kickback-scheme suspicions. The record further reveals that Dominion was represented by able counsel as early as May 2004, when it instituted the Audit Litigation,[10] and, consequently, we agree with the trial court that it was unreasonable for Dominion not to pursue additional information from Waters for a period of three years, when it could have easily done so.
Regarding FML, clearly Dominion was suspicious enough that when it did not get the information and documentation *361 it was hoping to obtain during the initial vendor audit in June 2003, it pursued litigation to compel the audit. Yet, even though that suit was filed in May 2004, we find no evidence that Dominion sought to subpoena records from Waters or the Waters' Companies, to depose any key witnesses, et cetera, when Dominion could have. Discovery devices are tools whereby each litigant is given the opportunity to search for and obtain information. Welch v. Robert Campbell, Inc., 316 So.2d 822 (La.App. 1 Cir.1975). The purpose of discovery is to afford all parties a fair opportunity to obtain facts pertinent to litigation, to discover true facts, and compel disclosure of such facts wherever they may be found. State, through the Dept. of Highways v. Spruell, 243 La. 202, 142 So.2d 396 (La.1962). Not only may discovery be had on any relevant matter involved in a pending action, but it may be had of any matter even if inadmissible at trial, which is reasonably calculated to lead to the discovery of admissible evidence. Royal American Corp. v. Republic Securities Corp., 392 So.2d 98 (La.App. 1 Cir. 1980). Dominion had a discovery vehicle available to it in the ongoing Audit Litigation whereby it could have reasonably obtained the information it contends that it needed, but apparently chose not to heed it, all to its detriment. Like the trial court, we find Dominion's inaction unreasonable under the circumstances.
By contrast, Dominion asserts that it did everything it could to obtain the information, but that Waters and FML continuously and affirmatively denied any improper activity. Indeed, Dominion urges that, because FML and Waters continuously denied any wrongdoing, it was not "unreasonable" to believe them. All along Dominion was searching for evidence to substantiate their suspected kickback scheme. This they got on 6 April 2005, when FML produced the invoices evidencing FML payments of $210,321.02 to Waters and the Waters' Companies with no accompanying documentation. The law only requires enough notice to incite inquiry of a claim to trigger the running of prescription, not evidence that will ultimately prove the claim. Babineaux, 04-2649, p. 5, 927 So.2d at 1125.
We agree with the trial court that, as of 6 April 2005, sufficient information existed for Dominion to bring a lawsuit against FML, Waters, and the Waters' Companies. We find that the existence of the payments made by FML to Waters and the Waters' Companies was reasonably knowable  and known  in excess of one year prior to Dominion's filing of the instant law suit. The fact that Dominion was represented by competent counsel at this time even further compels a finding that properly availing itself of the discovery process would have clearly exposed the defendants' potential liability. Thus, even if this court were to find that Dominion was unaware of facts which would support its causes of action in tort and under LUTPA prior to 22 August 2005 as maintained by Dominion, we find that such lack of knowledge was negligent and unreasonable under the facts and circumstances presented herein. The trial court did not manifestly err in failing to apply the fourth category of contra non valentum to extend the running of prescription in this case.
B. Judicial Confession
By its third assignment of error, Dominion argues in the alternative that FML, Waters, and the Waters' Companies should be barred from claiming that Dominion had probable cause to file suit prior to 3 August 2005, because the defendants have filed reconventional demands against *362 Dominion for malicious prosecution,[11] which are tantamount to a judicial confession under La. C.C. art. 1853.
A review reveals that the bases of the reconventional demands filed by the defendants are that Dominion's petition was filed without reasonable inquiry; was not well grounded in fact; was not warranted by existing law, or a good faith argument for the extension, modification, or reversal of existing law; and, was interposed for an improper purpose  namely, to harass and cause unnecessary litigation expense to the defendants. Accordingly, the defendants claim Dominion's petition was filed in violation of La. C.C.P. art. 863, warranting an award of sanctions. Moreover, defendants also maintain that Dominion has not sustained any damages that would support the filing of the petition, and that if, at trial, Dominion cannot prove that it was damaged by the alleged conduct of defendants, they are entitled to seek article 863 sanctions.
Nowhere in the reconventional demands do the defendants claim that Dominion's suit was premature or that Dominion lacked "probable cause" to bring suit. Accordingly, Dominion's third assignment of error lacks merit.
C. Continuing Tort Rule and the Louisiana Unfair Trade Practices Act
By its fourth assignment of error, Dominion contends that the continuing tort rule applies in this case to its claims under the Louisiana Unfair Trade Practice Act because of FMLs continued activity in denying Dominion its contractual right to a vendor audit for purposes of: (1) concealing that it made improper payments to Waters, and then (2) concealing the true nature of those payments to lull Dominion into inaction and to convince Dominion not to file suit.
The doctrine of contra non valentum does not apply to a preemptive period. The one-year statute of limitation set forth in LUTPA at La. R.S. 51:1409 E, is preemptive rather than prescriptive, thus precluding the application of contra non valentum. Canal Marine Supply, Inc. v. Outboard Marine Corp. of Waukegan, Ill., supra. While Dominion maintains that Waters made misleading statements to it regarding his business relationship with FML in July 2003, the record is devoid of evidence of any actions taken or statements made by Waters until July 2006, three years later, after any LUTPA case against Waters would have prescribed. Prescription that has already run cannot be suspended or interrupted. Geiger v. State ex rel Dept. of Health and Hospitals, 01-2206 (La.4/12/02), 815 So.2d 80. Likewise, Dominion has failed to point out any "continuing torts" of Dominion that would serve to interrupt prescription as to FML. As noted previously, prescription began to commence on 6 April 2005 when FML produced invoices evidencing substantial payments to Waters without substantiating documentation. Thus, any LUTPA claim Dominion may have had against FML prescribed one year later, on 6 April 2006, and the doctrine of contra non valentum cannot be invoked to extend this preemptive period. Accordingly, Dominion's fourth assignment of error is also without merit.
In the further alternative, by its fifth assignment of error, Dominion contends that the defendants engaged in acts *363 constituting violations of LUTPA occurring within one year from the date it filed its petition on 3 August 2006. Specifically, regarding FML, Dominion avers that on 24 May 2006 and 18 July 2006, Dominion produced documents in the Audit Litigation relative to the payments FML made to Waters and the Waters' Companies, documents which Dominion alleges were meant to conceal the true nature of the payments, constituting acts violating the LUTPA. Regarding Waters, Dominion contends that the statements made by Waters on 18 July 2006, when he was confronted with the invoices evidencing payments, were likewise meant to conceal the true purpose of the payments, constituting an act in violation of the LUTPA.[12]
Pretermitting whether any of these purported acts by FML and Waters, respectively, rise to the level of an unfair or deceptive act or practice in the conduct of commerce declared unlawful under LUTPA, we dismiss Dominion's fifth assignment of error on the basis that Dominion lacks standing to pursue a LUTPA action against these defendants. This court has previously determined that the personal right of action afforded under LUTPA applies only to direct consumers or to business competitors, none of which are present in the instant case. Gil v. Metal Service Corp., 412 So.2d 706 (La.App. 4 Cir.1982); Nat'l Oil Service of La. v. Brown, 381 So.2d 1269 (La.App. 4 Cir. 1980). See also Nat'l Gypsum Co. v. Ace Wholesale, Inc., 98-1196 (La.App. 5 Cir. 6/1/99), 738 So.2d 128. Thus, although Dominion may have a right of action for breach of contract and breach of fiduciary duty with Waters and FML, we find Dominion is not a member of the class of persons to which the LUTPA was intended to apply.

CONCLUSION
For the foregoing reasons, we affirm the judgment of the trial court, sustaining the defendants' Peremptory Exceptions of Prescription as to the tort and LUTPA claims made by Dominion against FML, Waters, and the Waters' Companies.
AFFIRMED.
NOTES
[1] Still pending against FML and Waters are Dominion's claims for breach of fiduciary duties and breach of contract.
[2] Pursuant to the terms of the Master Service Contract, FML provided drilling fluid engineering services, drilling fluid additives, and other oil field products to Dominion at various Dominion-operated well sites located in Louisiana.
[3] Mr. Rooney testified that, in or about June 2003, he was advised by Dick Glogger, Dominion's onshore drilling manager, that Dominion was experiencing problems with high drilling costs. Presumably, because Waters was responsible for purchasing drilling products and related services, Mr. Glogger requested that Mr. Rooney conduct an analysis of Water's mud drilling activities. As a result of Mr. Rooney's analysis, FML was identified by Dominion as a vendor with high costs. Consequently, on 11 June 2003, an audit demand letter was sent by Dominion to FML scheduling the vendor audit at FML's Houston offices for 25-26 June 2003.
[4] Dominion expressed concern at the audit regarding the coincidental dates that Waters began working with Dominion and the dates FML began doing business with Dominion.
[5] In this e-mail, Waters allegedly acknowledged that he performed work for other entities independent of his work for Dominion, and maintained that this "other" work was completely unrelated to any of the work he conducted for Dominion. The e-mail apparently did not divulge that FML was one of these "other" entities.
[6] Waters revealed to Dominion in this July 2005 meeting that he and his wife were the sole employees of his companies, Borehole and K.W. Management.
[7] At the time the instant action was filed, the Audit Litigation against FML was  and still is  pending in Jefferson Parish.
[8] Specifically, the trial court's 7 February 2007 judgment dismissed all claims asserted by Dominion in paragraph 93 (alleging FML and the Waters' Companies aided, abetted, and conspired with Waters in his breach of fiduciary duties to Dominion); paragraph 104 (alleging Waters and the Waters' Companies aided, abetted, and conspired with FML in FML's breach of duty to perform its contractual obligations to Dominion in good faith); paragraphs 105-108 (allegations of wrongful concealment); paragraphs 109-113 (allegations of unjust enrichment); and, paragraphs 114-116 (allegations of violation of Louisiana's Unfair Trade Practices and Consumer Protection Law, La. R.S. 51:1401, et seq.).
[9] In fact, the record reveals that Dominion had no contact with Waters during the three years prior to its confrontation with him on 18 July 2005.
[10] The Audit Litigation was initiated by Dominion based on its belief that a conflict of interest existed between FML and Waters that would account for the high drilling costs Dominion was experiencing from FML.
[11] Defendants' reconventional demands are not alleging "malicious prosecution" as asserted by Dominion in its original brief, but rather, are limited to seeking article 863 sanctions, including attorney's fees and reasonable expenses incurred in the defense of this case.
[12] Waters asserts that because Dominion's petition does not specifically allege that statements made by Waters on the 18 July 2006 constituted a violation of LUTPA, Dominion should not be allowed to assert this allegation for the first time on appeal. In Louisiana, however, we are subject to fact pleading rather than theory pleading and the court is bound to construe allegations of fact under any theory of law that entitles the pleader to relief. Cox v. W.M. Heroman & Co., Inc., 298 So.2d 848 (La.1974).