PAUL A. BONIN, Judge.
|, Rejecting the argument of the third party plaintiff, Plaquemines Parish Government, that its tort claim was not prescribed because of the application of the softening doctrine of contra non valentem, the trial judge sustained the exception of prescription filed by the third party defendant, The Gray Insurance Company. Plaquemines Parish appeals.
We have reviewed the trial judge’s factual findings under the well-known manifest error or clearly wrong standard. We find that the trial judge was not clearly wrong in his reasonable factual findings both that Plaquemines Parish knew that there was a problem with a wing wall built by - Gray’s insured, MR Pittman Group, LLC, more than one year before it brought suit and that Plaquemines Parish’s inaction in investigating the‘cause of the problem was not reasonable. Thus, we conclude that the trial judge was legally correct both in refusing to apply the' doctrine of contra,non, valentem and in dismissing with prejudice Plaquemines Parish’s third-party direct action, claim against Gray..
We explain our decision in greater detail below. ■ :

J¿

Before we begin our explanation,, however, we note that this is but one of four cases-to-date which bear the same caption because they all arise from the same district court proceedings.
Today we are releasing simultaneously with this decision two other decisions involving prescription issues, one of which importantly needs to be distinguished from this appeal. That one involves Plaquemines Parish’s ^conventional demand against .Pittman,. the .insured of Gray,, involving the. identical underlying tort. Pittman, unlike Gray fyowever, raised its objection of prescription not by way of exception but by way of a motion for summary judgment. -There., primarily because of the different standard of review which applies, we reverse the trial court’s decision granting a partial summary judgment on the issue that Plaquemines Parish’s tort claim against Pittman as prescribed. See MR Pittman, LLC v. Plaquemines Parish Government, 15-0860 (La.App. 4 Cir. 12/2/15), 182 So.3d 312, 2015 WL 7784327.
*306 The other decision we are releasing today addresses yet another appeal which involves prescription. There, Pittman sued the engineering firms involved in the same construction project. The engineering firms filed a joint exception of prescription which was sustained by the trial judge. We affirmed that ruling. See MR Pittman, LLC v. Plaquemines Parish Government, 15-0396 (La.App. 4 Cir. 12/2/15), 182 So.3d 291, 2015 WL 7783693.
[sWe have previously dismissed an appeal filed by Plaquemines Parish against the engineering firms who, among other things, designed the wing wall at issue in this appeal. We dismissed that appeal because the district court judgment was not a final appealable judgment. See MR Pittman, LLC v. Plaquemines Parish Government, 15-0395 (La.App. 4 Cir. 9/16/15), 176 So.3d 549, 2015 WL 5447771.
II
At the outset of our explanation, we provide a description of the background of these proceedings.
Plaquemines Parish operates a system of drainage pumping stations. In connection with its efforts to rebuild the system in the wake of Hurricane Katrina, Plaque-mines Parish sought bids from contractors for the construction of the New Gainard Woods No. 1 drainage pump station. It awarded the construction contract to Pittman, with whom it subsequently entered into a public works contract. Before construction was substantially complete, Pittman sued Plaquemines Parish and its consulting engineers All South Consulting Engineers, L.L.C., Evans-Graves Engineers, Inc., and Stuart Consulting Group, Inc., on June 23, 2011, alleging that the defendants’? actions delayed the commencement of the project, which caused Pittman to suffer damages for which the defendants refused to pay. On April 26, 2012, Pittman amended its petition to claim, among other things, damages for its uncompensated construction of a canal wing wall that was used to protect the pumping station.
|Jn its answer, Plaquemines Parish brought a reconventional demand against Pittman and cross-claims against the engineering firms. The reconventional demand did not seek compensation from Pittman. The cross-claims alleged, on the other hand, that Plaquemines Parish was entitled to compensation from the engineering firms in the event that it was found liable to Pittman on the main demand. In response to Pittman’s second supplemental and amending petition, Plaquemines Parish amended its answer and reconventional demand on June 30, 2014, to allege a property damage claim against Pittman for: “Causing damage to sheet metal wall system, including the wing wall system, by improperly placing the crane too close to the wall system and/or failing to peroly [sic ] support the crane.” In accordance with this damage claim, Plaquemines Parish also brought a third-party claim against Gray, Pittman’s commercial liability insurer, pursuant to Louisiana’s Direct Action Statute alleging that Gray was liable for Pittman’s negligent conduct. See La. R.S. 22:1269 B.[1]
*307 Soon thereafter, Gray answered Plaque-mines Parish’s petitions, denied- liability, and asserted an exception of prescription. In its exception, Gray argued |Bthat Plaquemines Parish’s June 30, 2014 tort claim for property damage, which was subject to a one-year prescriptive period, had prescribed because it was brought more than two and one-half' years from Pittman’s completion of the project in December 2011 and more than four years from Plaquemines Parish’s discovery of the damage.
While not explicitly conceding thalj its claim for property damages was not filed within a year of its discovery of the damage to the wing wall, Plaquemines Parish responded to Gray’s exception of prescription by asserting that application of the doctrine of contra non valentón should be used to. toll the one-year prescriptive period. It claimed that its expert engineer could establish that Pittman’s actions damaged the wing wall and that statements made by Pittman’s representative at an April 13, 2011 project meeting lulled it into believing that it did not have a tort claim against Pittman.
In support of its contention that Pittman caused the damage, Plaquemines Parish introduced extracts from the deposition of a Plaquemines Parish employee who testified that one of All South’s engineers, in addition to one of its own pump operators, noticed the damage during the course of construction. It also introduced several reports from Roy Carubba, its expert engineer, who concluded that the damage was caused by Pittman’s positioning of a crane “adjacent to the existing wall and overloading the wall causing it to bé permanently damaged.” In support of its contention that Pittman intentionally lulled it into inaction, Plaquemines Parish pointed to the minutes from an April 13, 2011 project meeting between ^representatives of Plaquemines Parish, Pittman, All South, and Stuart which, discussed, among other things, problems with the wing wall:-.
! -The wing wall work began with discussion of the existing wing wall structure. [Plaquemines Parish] believes that the’ existing wall is now beginning to lean into the intake basin. [Plaque-mines Parish] questioned Pittman whether this wall is failing and the possible causes of this failure or if the problem is a design issue. [Pittman] responded that they have not placed any additional load on the wall that was not present since the start of construction. These concerns were discussed in-house, but without direction from the design team, [Pittman] did not pursue further. [Pittman] believes that the wall may have a design issue due to the several foot cantilever the wall must support without tie-backs. [Stuart Consulting] was not aware who among the design team designed the wing wall but would look into the information.
Plaquemines Parish also asked the trial judge, by way of alternative argument, to preserve its claim for damages to the wing wall as an offset claim in the event he concluded that its damage claim had prescribed. See La. C.C.P. art. 424 (“Except as otherwise provided herein, a prescribed obligation arising under Louisiana law may be used as a defense if it is incidental to, or connected with, the obligation sought to be enforced by the plaintiff.”).
*308 Plaquemines Parish and Gray subsequently argued the merits of the exception before the trial judge, who sustained the exception at the close of the hearing. Relying upon Marin v. Exxon Mobil Corp.[2], the trial judge explained that the exhibits introduced by Plaquemines Parish in. support of its argument did not establish that Pittman attempted to conceal the damage to the wing wall, committed fraud, or engaged in ill-practices. Characterizing Pittman’s statements in the project meeting minutes as “evasive,” the trial judge nevertheless refused to |7find that the minutes established that Pittman mischaracterized the cause of the damage. The minutes, on the other hand, led the trial judge to conclude that Plaquemines Parish knew that there was a problem with the wing wall by the time of the April 13, 2011 meeting, but that its .inaction in investigating the. cause of the problem was not reasonable:
At this point in time, L think that pretty much seals it with me. I think [Plaquemines Parish] knew at that time there was an-issue. I don’t know why it wasn’t pursued any further. I believe it should have been. They certainly had engineers on the project that could have looked into it. Certainly, if a wall was leaning and if it’s my construction I’m going to start asking questions.
And what causes me a lot of concern is the inability — And I agree with the Parish — that even if you construe, which I think they could, that [Pittman] .was maybe being a little evasive in answering the question about the additional load on the wall and turn around and say, “Well, maybe it’s a design issue” to me doesn’t really matter at that point. What matters at that point is there’s an acknowledgement there’s a problem. You’ve got to do something about it. You can’t-wait three years after the fact.
I’m going to find contra non valentem does hot apply. I’m going to grant the exception.
The trial judge, however, did not address Plaquemines Parish’s alternative argument (the so-called offset claim) in either his orally rendered reasons for judgment or the subsequent written judgment. See M.J. Farms, Ltd. v. Exxon Mobil Corp., 07-2371, p. 12 (La.7/1/08), 998 So.2d 16, 26 (“Generally, when a trial court judgment is silent as to a claim or demand, it'is presumed the relief sought was denied.”); Plaquemines Parish then timely sought a devolutive appeal upon a designated record. See La. C.C.P. art. 2128; Armstrong v. Johnson, 11-1379, pp. 7-8 (La.App. 4 Cir. 7/5/12), 97 So.3d 548, 552-553.
-kHI
We summarize now the well-established decisional rules applicable to exceptions of prescription and to the contra non valen-tem doctrine.
A
“Prescription must be pleaded.” La. Civil Code art. 3452. The objection is raised by peremptory, exception. See La. C.C.P. art. 927 A(l). Ordinarily, the ex-ceptor bears the burden of proof at the trial of the peremptory exception. See Spott v. Otis Elevator Co., 601 So.2d 1355, 1361 (La.1992).[3] The trial court is. not bound to accept as true the allegations of a *309 petition in its trial of the peremptory exception. See Bowers v. Orleans Parish School Bd., 95-2530, pp. 7-8 (La.App. 4 Cir. 5/29/96), 694 So.2d 967, 972. Evidence may be introduced at the trial of an exception of prescription. See La. C.C.P. art. 931. Because Gray’s exception of prescription was filed before the trial of the case, evidence was admissible at the ensuing hearing on the exception. See La. C.C.P. arts. 929, 931. Here, the effect of sustaining Gray’s exception was the dismissal with prejudice of Plaquemines Parish’s third party demand against it. See La. C.C.P. arts. 934, 1673.
We review de novo & judgment sustaining an exception of prescription because it raises a legal question. See Metairie III v. Poche’ Const., Inc., 10-0353, p. 3 (La.App. 4 Cir. 9/29/10), 49 So.3d 446, 449. The standard controlling our review of a peremptory exception of prescription compels us to strictly construe |sthe statutes against prescription and in favor of the claim that is said to be extinguished. See Albe v. City of New Orleans, 14-0186, p. 6 (La.App. 4 Cir. 9/17/14), 150 So.3d 361, 366, writ denied, 14-2166 (La.12/8/14), 153 So.3d 445. When, as here, evidence is introduced and evaluated at the trial of a peremptory exception, we first review the entire record to determine whether the trial court manifestly erred with its factual conclusions. See Davis v. Hibernia Nat. Bank, 98-1164, p. 2 (La.App. 4 Cir. 2/24/99), 732 So.2d 61, 63. And we cannot disturb a trial court’s factual findings supporting prescription unless they are clearly wrong. See Carter v. Haygood, 04-0646, p. 9 (La.1/19/05), 892 So.2d 1261, 1267.
. B
Although Article 3467 of the Louisiana Civil Code provides that1 “[prescription runs against all persons unless exception is established by legislation,” Louisiana jurisprudence has long recognized the doctrine of .contra non valentem as a means. of suspending the running of--prescription when the circumstances of a case fall within one of four categories.[4] See Frank L. Maraist and Thomas C. Galligan, Louisiana Tort Law § 10-4(b), 222 (1996). The Supreme Court has indicated that the doctrine is used- to “soften the occasional harshness of prescriptive statutes.” Carter, 04-646, p. 11, 892 So.2d at 1268. Nevertheless, the Supreme Court has also cautioned' that the doctrine only applies in “exceptional circumstances.” Marin, 09-2368, 09-2371, p. 13, 48 So.3d at 245.
l.uLouisiana jurisprudence recognizes four instances where contra non va-lentem has been applied to prevent the running of prescription: 1) where there was some legal cause which prevented the courts.or their officers from taking cognizance of or acting on the plaintiffs action; 2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting; 3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; and 4) where the cause of action is not known or reasonably knowable by the plaintiff, even though this ignorance is not induced by -the defendant. See Marin, 09-2368, 09-2371, p. 12, 48 So.3d at 245.
These categories allow “the courts to weigh the ‘equitable nature of the circumstances in each individual case’ to determine whether prescription will be tolled.” Wells v. Zadeck, 11-1232, p. 9 (La.3/30/12), *310 89 So.3d 1145, 1150, quoting Plaquemines Parish Commission Council v. Delta Development Company, Inc., 502 So.2d 1034, 1056. n. 52 (La.1987). Here, we need only discuss the third category because Plaque-mines Parish relies upon no other in its argument.[5]
JjjIV
We conclude, upon our de novo review, that the trial judge correctly sustained Pittman’s exception of prescription. We also conclude that the trial judge’s factual findings made in connection with his judgment were neither clearly wrong nor unreasonable. ,
“The nature of a cause of action must be determined before it can be decided which prescriptive term is applicable.” See Albe, 14-0186, p. 8, 150 So.3d at 367. The character of an action disclosed in the pleadings determines the prescriptive period applicable to that action. Id. Plaque-mines Parish’s petitions allege numerous claims, but only one is lodged against Gray in its capacity as Pittman’s 'insurer — a property damage claim brought pursuant to La. R.S. 22:1269 B, the Direct Action Statute.[6] Plaquemines Parish does not dispute that this claim is delictual, or tort-based, and thus subject to a one-year prescriptive period. See La. Civil Code art. 3492; Pracht v. City of Shreveport, 36,504, p. 7 (La.App. 2 Cir. 10/30/02), 830 So.2d 546, 550; Singleton v. Simms, 438 So.2d 633, 635 (La.App. 4th Cir.1983).
Ordinarily, prescription commences when a plaintiff obtains “actual or constructive knowledge of facts indicating to a reasonable person that he or she is hathe victim of a tort.” Campo v. Correa, 01-2707, pp. 11-12 (La.6/21/02), 828 So.2d 502, 510. Provided an injured party has constructive knowledge of facts that would entitle him to bring suit, the .prescriptive period will commence even if the injured .party does not have actual knowledge of such facts. See Dominion Exploration & Prod., Inc. v. Waters, 07-0386, 07-0287, p. 8 (La.App. 4 Cir. 11/14/07), 972 So.2d 350, 357. An injured party has constructive notice when he possesses information sufficient to incite curiosity, excite attention, or put a reasonable person on guard to call for inquiry, and includes knowledge or notice of everything to which that inquiry might lead. Id. -The ultimate issue is the reasonableness of the plaintiffs action or *311 inaction in light of his education, intelligence,- and the nature of the defendant’s conduct. Campo, 01-2707, p. 12, 828 So.2d at 511. The trial judge in this ease concluded as a matter of fact that Plaque-mines Parish had sufficient knowledge of the leaning wing wall to start the running of prescription by the time of the April 13, 2011 project meeting.
V
We turn .now to explain why the one-year prescriptive period was not tolled in this case under the third category of contra non valentem, which prevents the running of prescription “when the defendant has done some act effectually to lull the victim into inaction and prevent him from availing himself of his cause of action.” Albe, 14-0186, p. 9, 150 So.3d at 368, quoting Ames v. Okie, 11-1540, p. 15 (La.App. 4 Cir. 5/23/12), 97 So.3d 386, 395.
11sThis category of contra non valentem “has been applied to cases where a defendant has concealed the fact of the offense or has committed acts (including concealment, fraud, misrepresentation, or other ‘ill practices’) which tend to hinder, impede, or prevent the plaintiff from asserting his cause of action, as long as plaintiffs delay in bringing suit is not willful or the result of his own negligence.” Albe, 14-0186, pp. 9-10, 150 So.3d at 368, citing Marin, 09-2368, 09-2371, p. 23, 48 So.3d at 251-252. This category is implicated only when: 1) the defendant engages in conduct which-rises to the level of concealment, misrepresentation, fraud or ill practice; 2) the defendant’s actions effectually prevented the plaintiff- from pursuing a cause of action; and 3) the plaintiff must have been reasonable in his or her inaction. See Marin, 09-2368, 09-2371, p. 24, 48 So.3d at 252; Allstate Ins. Co. v. Fred’s Inc., 09-2275 (La.1/29/10), 25 So.3d 821 (contra non valentem not applicable where plaintiffs lack of due diligence resulted in- failure to ascertain -manufacturer’s identity which was not disclosed on label). Importantly therefore-, contra non valentem will not toll a claim if the claimant’s “ignorance is attributable to his own willfulness,- neglect, or unreasonableness.” Dominion Exploration & Prod., Inc., 07-0386, 07-0287, p. 14, 972 So.2d at 360.
Here, Plaquemines Parish argues that Pittman lulled it into believing that it did not have a tort claim because of Pittman’s April 13, 2011 statements that it had not “placed any-additional load on the wall that was not present since the start of construction,” and that the problem with the wing wall might be due to- -a design | Mflaw. The trial judge concluded otherwise and, having reviewed the.record, we cannot say that his conclusions were clearly wrong or unreasonable.
Specifically, there is.no indication in the record that Pittman attempted to conceal the damage to the wing-wall. It is undisputed that the leaning wing wall was apparent to all who viewed it and that Pittman did nothing to cover .up the condition. The alleged “statements” upon which Plaquemines Parish bases the entirety of its argument are in fact derived from the minutes of a project meeting and are not encapsulated within quotation marks. Although Pittman has not denied the -statements, Plaquemines Parish has failed to introduce any sworn testimony substantiating the minute’s attributions. And while the statements referenced in the, project minutes can be interpreted as “evasive,” they arguably do not rise to the level of fraud or ill-practice.
The trial judge found from the evidence that Plaquemines Parish knew that there was a problem with the wing wall by the time of the April 13, 2011 meeting, but that its inaction in investigating the cause of the problem was -not reasonable. While *312 this may not be the only finding that a reasonable.fact-finder could have arrived at, it is a reasonable one and it is not a clearly wrong finding. The record, simply put, fully supports the proposition that Pittman’s words or actions did not prevent Plaquemines Parish from pursuing a cause of action for damage to the wing wall.
Based upon that factual resolution, the trial judge was legally correct when he concluded that contra non valentem does not apply to Plaquemines Parish’s claim against Gray. Plaquemines Parish’s direct action tort 11sclaim against Gray, which was filed on June 30, 2014, is therefore prescribed, and’dismissal with prejudice was the proper result. •
VI
Before closing we dispose of Plaquemines Parish’s alternative argument — that the trial judge erred by refusing its request to preserve as an offset claim its claim for damages to the wing wall after concluding that its negligence claim against Gray. had prescribed. Plaquemines Parish’s argument is premised upon Article 424 of the Louisiana Code of Civil Procedure, which permits the use of- a prescribed claim as a defense. See Hennessey Const. Corp. v. Halpern, 06-1099, pp. 3-4 (La.App. 4 Cir. 1/31/07), 952 So.2d 739, 740-741.
Article 424 provides clearly that a prescribed claim may be utilized as a defense provided “it is incidental to, or connected with, the obligation sought to be enforced.” La. C.C.P. art. 424.[7] Gray, however, has neither brought any claim against Plaque-mines Parish nor seeks to enforce any obligation against Plaquemines Parish in connection with the wing wall. Because there is no claim by Gray, the insurer of Pittman, against Plaquemines Parish, there can be «o offset. The trial judge’s silence on this point is understandable, and his implied rejection of Plaquemines Parish’s contention is correct.
J^DECREE
The trial court’s judgment in favor of The Gray Insurance Company, sustaining its exception of prescription, dismissing with prejudice the Plaquemines Parish Government’s claims against it is affirmed. Costs of this appeal are taxed to the Plaquemines Parish Government. See La. C.C.P. art. 2164.
AFFIRMED

. 09-2368, 09-2371 (La.10/19/10), 48 So.3d 234.

. If prescription is evident on the face of the pleadings, the burden shifts to the plaintiff to show that the action has not prescribed. See Williams v. Sewerage & Water Bd. of. New Orleans, 611 So.2d 1383, 1386 (La.1993). Plaquemines Parish's third-party petition, however, is not prescribed on its face,

. Contra non valentem non currit praescriptio means that prescription does not run against a person who could not bring his suit. See Scott v. Zaheri, 14-0726, p. 15 (La.App. 4 Cir. 12/3/14), 157 So.3d 779, 788 n. 9.

. See generally Willis v. City of New Orleans, 14-0098, p. 7 (La.App. 4 Cir. 6/18/14), 143 So.3d 1232, 1236 n. 3 ("According to the party presentation principle, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present.”) (internal quotation marks omitted), citing Greenlaw v. United States, 554 U.S. 237, 243-244, 128 S.Ct. 2559, 171 L.Ed.2d 399 (2008). But also see La. C.C.P. arts. 2129, 2164 ("The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal.”); Merrill v. Greyhound Lines, Inc., 10-2827, p. 2 (La.4/29/11), 60 So.3d 600, 601 ("Based on these codal authorities, we have held that an appellate court has the authority to consider an issue even when there is no assignment of error.”).

. The Direct Action Statute grants a procedural right of action against an insurer where the plaintiff has a substantive cause of action against the insured. See Green v. Auto Club Group Ins. Co., 08-2868, p. 3 (La.10/28/09), 24 So.3d 182, 184 (citations omitted). The Statute "was enacted to give special rights to tort victims, not to-insureds with contract claims against a defendant.” Cacamo v. Liberty Mut. Fire Ins. Co., 99-3479, 99-3480, 99-3481, p. 3 (La.6/30/00), 764 So.2d 41, 43. "In the absence of the Direct Action Statute, a plaintiff would have no right of action against an alleged. tortfeasor’s liability insurer because the obligation between the plaintiff and the alleged tortfeasor is delictual in nature, and plaintiff has no contractual relationship with the tortfeasor's insurer.” Green, 08-2868, p. 3, 24 So.3d at 184.

. La. C.C.P. art. 424 reads in pertinent part: "Except as otherwise provided herein, a prescribed obligation arising under Louisiana law may be used as a defense if it is incidental to, or connected with, the obligation sought to , be enforced by the plaintiff.” It codified the . notion, sometimes referenced as a maxim, that what cannot be used as a sword can be used as a shield.